**Clarence A. MARTIN, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 82S00–9811–CR–00710.

Supreme Court of Indiana.

Oct. 19, 2000.

Dennis A. Vowels, Evansville, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Clarence A. Martin, Jr., appeals his conviction for murder on grounds that the trial court made three errors concerning the admission of evidence. We affirm, concluding that (1) evidence of a prior police traffic stop did not violate the proscription on prior bad act evidence, (2) a witness's prior inconsistent statement was admitted for purposes of impeachment and so was not hearsay, and (3) evidence of another witness's juvenile record was properly excluded.

This Court has jurisdiction over this direct appeal because the longest single sen-

tence exceeds fifty years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict indicate that on October 13, 1997, Defendant Clarence Martin and Jason Small drove to Charles Reed's house to purchase marijuana. Reed answered the door and let both Defendant and Small into the house. As Reed entered the back bedroom to retrieve the marijuana, he informed his girlfriend, Nicole Phipps, that Defendant and Small were in the living room. Upon Reed's return to the living room, Phipps heard gunshots. From the bedroom, she peered into the kitchen and observed Small instructing someone to "shoot [Reed] in the head." (R. at 396, 402.) After the gunshots subsided, she heard Defendant tell Small, "let's go." (R. at 391.) Phipps escaped through a bedroom window and ran to her father's house. Police were summoned and found Reed shot to death.

Reed's autopsy showed gunshot wounds to the lower abdomen, buttocks, lower chest, left jaw, chin and mouth. He had died from the accumulation of blood in his chest cavity.

The State charged Defendant with Murder[1] and Robbery,[2] a class B felony. Both Defendant and co-defendant Jason Small were tried together before a jury on June 12, 1998. The jury convicted Defendant of murder but found him not guilty of robbery. On July 9, 1998, the trial court sentenced Defendant to sixty years.

Additional facts will be provided as necessary.

1. Ind.Code § 35–42–1–1(2) (1993).

2. *Id.* § 35–42–5–1.

3. Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, it may be admissible for purposes other than to show action in conformity with the charged conduct, such as to show "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mis-

### Discussion

#### I

■ At trial, Officer Hilsmeyer testified that during a traffic stop three months before Reed's death, Defendant told him that he lived at 1414 Culver Street. Defendant contends that the trial court abused its discretion by admitting this testimony. His argument is that the evidence that an officer questioned him during a traffic stop improperly allowed the jury to consider that he had engaged in wrongful conduct unrelated to the crime for which he was on trial.

■ Generally, evidence of unrelated wrongful conduct is inadmissible. Ind. Evidence Rule 404(b).[3] This rule is designed to prevent the jury from inferring present guilt from prior wrongful conduct. *See Barker v. State,* 695 N.E.2d 925, 929–30 (Ind.1998); *Evans v. State,* 643 N.E.2d 877, 883 (Ind.1994).

■ We do not find the prior conduct presented to the jury here, a response to a question asked during a routine traffic stop, constituted a prior bad act from which the jury might draw a forbidden inference about Defendant's character or guilt. No reference was made to the purpose of the stop or to the arrest and filing of charges that resulted. Furthermore, the officer's testimony was offered to link Defendant to an address.[4] As such, the testimony was directly relevant to an issue at trial. The trial court did not abuse its discretion in admitting the officer's testimony.[5]

take or accident." Ind. Evidence Rule 404(b).

4. Prior to Officer Hilsmeyer's testimony, the State had established that the murder weapons were located in the basement of a vacant house on 1414 Culver Street.

5. Defendant also contends that because Officer Hilsmeyer's testimony was based on police records, it should have been excluded pursuant to Indiana Evidence Rule 803(8). Defendant, however, fails to advance an argu-

## II

At trial, Detective Taylor testified to an out-of-court statement made by Sonya Steverson. Defendant contends that the trial court committed reversible error when it allowed this statement because it constituted inadmissible hearsay. The State counters that the statement was not hearsay because it was offered to impeach a witness, not to prove the truth of the matter asserted.

Jessica Compton lived across the street from her son and daughter-in-law, James and Sonya Steverson. James Steverson was a close friend of Defendant, and Defendant was at his house on the evening of Reed's death. The day after Reed was shot, Compton voluntarily went to police headquarters and spoke to Detective Taylor, who was assigned to investigate the death of Reed. Based on the information obtained from Compton, Detective Taylor searched the Steverson home. Detective Taylor testified that during the search, Sonya told him that if he was unsuccessful in locating the murder weapon in her home, he should search the basement of a vacant house with a wheelchair ramp located at a three-way stop sign on Culver Street. Based on this information, Detective Taylor and three other officers searched a home matching this description, located at 1414 Culver Street, and discovered two guns and ammunition in the basement.

On June 9, 1998, the State deposed both James and Sonya Steverson. James Steverson denied telling his wife that Defendant told him where the murder weapons were hidden. Sonya Steverson denied having any recollection that she told officers that they should search the house at 1414 Culver Street for the guns. Defendant filed a motion *in limine* to prohibit the State from introducing testimony from any officer identifying Sonya Steverson as the source of the police investigation information without first conducting a hearing outside the presence of the jury.

Prior to Sonya Steverson's testimony at trial, the trial court conducted such a hearing. Sonya Steverson repeatedly denied that she told Detective Taylor to search for the guns in the basement of a vacant house on Culver Street. The State argued that it had to question her in the presence of the jury regarding this statement because if she denied it, Detective Taylor would be called to impeach her with her prior inconsistent statement to him.

Defendant argued that Sonya Steverson's alleged out-of-court statement offered by Detective Taylor constituted hearsay and denied him his right to a fair trial. The trial court overruled Defendant's objection on grounds that the out-of-court statement was offered as a matter of impeachment.

After the jury returned to the courtroom, the State proceeded with its direct examination of Sonya Steverson. She testified that she observed her husband talking to Defendant the morning after the shooting. She also acknowledged that police officers came to search her house but denied telling Detective Taylor to search the house on Culver Street for the guns. The next day Detective Taylor testified that during the search of the Steverson

ment or cite to the record in support of his contention. *See* Ind. Appellate Rule 8.3(A)(7). Because Defendant has failed to provide a cogent argument in support of his claim, it is not subject to review. *Id.; Harrison v. State,* 707 N.E.2d 767, 777 (Ind.1999), *cert. denied,* ── U.S. ──, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000); *Shields v. State,* 699 N.E.2d 636, 641 n.2 (Ind.1998) (citing *Williams v. State,* 631 N.E.2d 485, 489 (Ind. 1994)). Even if properly before us, we doubt Defendant could prevail. First, the State did

not attempt to admit any police records or investigative reports but relied solely on Officer Hilsmeyer's testimony to establish Defendant's connection to the Culver address. Second, for the purpose invoked here, this evidence rule provides that investigative reports by police and other law-enforcement personnel are hearsay. But the statement offered by Officer Hilsmeyer was a statement made by Defendant against his interest and so not hearsay under Indiana Evidence Rule 801(d)(2)(A).

house, Sonya Steverson had pulled him aside and told him "that if the gun was not located in her house to search the basement of a vacant house at a three[-way] stop sign with a wheel chair ramp on Culver for the gun." (R. at 1375.) Detective Taylor also testified that the murder weapons were ultimately located at the home on Culver street. The trial court overruled Defendant's timely objections. No jury admonition was requested of or given by the trial court to limit the use of Detective Taylor's testimony.

## A

■ Hearsay testimony is excluded from judicial proceedings because its admission defeats a defendant's right to confront and cross-examine witnesses against him. *Williams v. State,* 544 N.E.2d 161, 162 (Ind.1989); Ind. Evidence Rule 802. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Consequently, a witness may not testify about an out-of-court statement to prove the truth of the matter asserted. *Taylor v. State,* 659 N.E.2d 535, 543 (Ind.1995). An exception to this rule does exist for certain prior inconsistent statements: "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, on in a deposition. . . ." Ind. Evidence Rule 801(d)(1)(A). But because Sonya's prior statement was not made under oath, that exception is not available here.

## B

■ The State argues that its principal purpose for offering this out-of-court statement was to impeach Sonya Steverson.[6] Defendant contends that the admission of the statement permitted the jury to consider the statement as substantive evidence of the location of the murder weapon, allowing the jury to link him to Reed's murder. As such, Defendant argues that this prior inconsistent statement constituted inadmissible hearsay.

■ If the State offered Sonya Steverson's statement to challenge her credibility, it is not hearsay. It is well established that a prior inconsistent statement may be used to impeach a witness. *See Birdsong v. State,* 685 N.E.2d 42, 46 (Ind.1997); *Humphrey v. State,* 680 N.E.2d 836, 839 (Ind.1997) (citing 13B Robert Lowell Miller, Jr., *Indiana Practice: Courtroom Handbook on Indiana Evidence* 176 (1996–97 ed.)); *Lewis v. State,* 451 N.E.2d 50, 54 (Ind.1983); *LaBine v.State,* 447 N.E.2d 592, 595 (Ind.1983); *Davis v. State,* 456 N.E.2d 405, 410 (Ind.1983); *Stutzman v. State,* 250 Ind. 467, 235 N.E.2d 186 (1968). And when a prior inconsistent statement is used to impeach a witness, it is not hearsay because the statement is not used to prove the truth of the matter asserted.[7] *See Birdsong,* 685 N.E.2d at 46; 13 Robert Lowell Miller, Jr., *Indiana Practice* § 801.409, at 522–23 (2d ed.1995).

Defendant cites *Mason v. State,* 689 N.E.2d 1233 (Ind.1997). In *Mason,* where a police officer testified as to an out-of-court statement, we reversed the conviction because there was no reasonable assurance that the jury did not receive testimony as evidence of the truth of the matter asserted. *Id.* at 1236. But

---

**6.** We note that the State sought to impeach its own witness. We have held that the Indiana Rules of Evidence permit a party to impeach its own witness. Ind. Evidence R. 607; *Ingram v. State,* 715 N.E.2d 405, 407 (Ind. 1999); *Harrison v. State,* 699 N.E.2d 645, 648–49 (Ind.1998).

**7.** Indiana Evidence Rule 613 imposes certain requirements on the use of a witness's prior inconsistent statement for impeachment purposes. There is no claim in this case that Evidence Rule 613 was violated.

in that case, the police officer testified as to information supplied to him by a confidential informant who was never identified. The statement was not used for impeachment at all; it was clearly hearsay.

Defendant's underlying contention here is that the admission of the prior inconsistent statement might have allowed the jury wrongly to consider the statement as substantive evidence. This concern does not render the statement inadmissible. If Defendant believed there was a danger that the jury would use the statement as substantive evidence linking him to the crime, then it was incumbent upon Defendant to request that the jury be admonished to the effect that the statement was only to be used to judge the witness's credibility.[8] *Humphrey*, 680 N.E.2d at 839 (quoting Ind. Evidence Rule 105); *Lewis*, 451 N.E.2d at 54; *Head v. State*, 443 N.E.2d 44, 58 (Ind.1982). In fact, during the hearing on this issue, the State reminded Defendant that he could request an admonition to limit the admissibility of the statement to impeachment only.[9] Defendant made no such request.

The State was entitled to offer the prior inconsistent statement to challenge the credibility of Sonya Steverson. Because a prior inconsistent statement is admissible for impeachment purposes, the trial court properly admitted the prior inconsistent statement on this basis.[10]

## C

▮▮▮▮ Even assuming that the trial court erred in admitting the prior inconsistent statement, we disregard it as harmless error unless it affects the substantial rights of a party. Ind. Trial Rule 61. An error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of a party. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995). In view of the evidence of guilt here, we would not find reversible error.

Whatever danger there was of a circumstantial inference of guilt from the statements made to impeach Sonya Steverson, this was not the sole basis the jury had for finding Defendant guilty of murder. Eyewitness Nicole Phipps placed Defendant at the scene of the crime.[11] Jessica Compton voluntarily approached police officials to

8. Rule 105 reads, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly." We have previously determined that this rule uses the term "admonish" rather than "instruct" so as to distinguish a limiting *instruction* (usually given after evidence has been presented) from a limiting *admonition* (usually given during trial). *Humphrey*, 680 N.E.2d at 839 n.7.

9. During the hearing the State essentially encouraged Defendant to admonish the jury given that the prior inconsistent statement was admissible for impeachment purposes:

 [T]he bottom line is, Judge, [the statement] is being offered as impeachment. I can impeach any witness at any time with a statement they made at an earlier time. If it's not under oath, if it's not part of a deposition, then it's not admissible as substantive evidence. It is, however admissible as impeachment, and he can ask for a

limiting instruction to the "jury to say, Jury, you are only to consider this as impeachment of Sonya Steverson."
(R. at 989–90.)

10. Defendant also contends that the trial court committed reversible error when it permitted Detective Taylor to reveal the source of the police investigation information (Sonya Steverson) to the jury thereby circumstantially linking Defendant to the crime. Because we find that the trial court did not err in admitting the prior inconsistent statement for impeachment purposes, we reject this claim as well.

11. The witness did not "see" Defendant at the shooting, but did hear his voice as he spoke to co-defendant Small. (R. at 391, 514, 408.) Phipps testified that she was familiar with Defendant's voice due to the number of occasions she had to visit with him (an estimated 80 to 90 times). Additionally, Compton's statement to police also indicated that Phipps could recognize Defendant's voice because "they used to go out together." (R. at 1508.)

inform them that she had reason to believe, based on Defendant's actions and various incriminating statements, that he was involved in the murder. Given the amount of evidence in support of Defendants guilt, the impact on the jury of this statement was sufficiently minor so as not to affect the substantial rights of Defendant.

 Finally, it is "well settled that the erroneous admission of evidence does not require reversal if other evidence having the same probative value is admitted without objection or contradiction." *Johnson v. State,* 472 N.E.2d 892, 902 (Ind.1985). Here, evidence linking Defendant to the address where the weapons were found was already properly admitted under Rule 801(d)(2)(A) (A statement made by a party that is offered against that party is not hearsay and thus admissible.), when Officer Hilsmeyer testified that Defendant gave "1414 Culver" as his address during a routine traffic stop. *See also supra* Part I. Accordingly, any error would have been harmless.

### III

Defendant contends that the trial court committed reversible error by excluding the juvenile record of Pagerick Moody, a sixteen-year-old State witness. Defendant argues that his Sixth Amendment right to cross-examine a witness was impermissibly compromised when the trial court excluded the witness's juvenile record for impeachment purposes. The State maintains that the trial court properly excluded the juvenile record pursuant to Indiana Evidence Rule 609(d).[12]

Generally, evidence relating to juvenile delinquency proceedings cannot be used as evidence for purposes of impeachment. Ind. Evidence Rule 609(d) (1996). *See*

*also Goolsby v. State,* 517 N.E.2d 54, 61 (Ind.1987) (recognizing that this Court has consistently held that juvenile delinquency proceedings are considered civil in nature and consequently are not to be used to impeach a defendant in a criminal proceeding); *Perkins v. State,* 483 N.E.2d 1379, 1384 (Ind.1985) (holding that juvenile adjudications may not be used for impeachment purposes because the disposition of a juvenile does not constitute a criminal conviction).

Despite this rule, Defendant argues on appeal that the trial court should have admitted Moody's juvenile record to afford Defendant the opportunity (1) to uncover Moody's potential bias and prejudice, and (2) to challenge his credibility given that he was adjudicated a delinquent for a crime of dishonesty.

### A

Defendant argues on appeal that by excluding Moody's juvenile record, the trial court prevented him from developing any potential bias or prejudice in an attempt to impeach him. He argues that Moody's juvenile record would have assisted him in demonstrating that Moody provided favorable State testimony for fear of having his home visitation privileges revoked or perhaps his placement in the juvenile facility revisited. (Br. of Appellant at 19.) Defendant relies on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of this argument.

In *Davis,* the Supreme Court held that the defendant, who was convicted of grand larceny and burglary, was denied his constitutional right to confront witnesses when the trial court prohibited him from cross-examining a key State witness to show his probation status following an ad-

---

12. Indiana Rule of Evidence 609(d) provides: "Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the

offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence."

judication of juvenile delinquency.[13] *Id.* at 317–20, 94 S.Ct. 1105. The seventeen-year-old witness identified the defendant as one of the men he encountered and spoke to standing next to a car near the scene of the burglary. *Id.* at 310, 94 S.Ct. 1105. As evidence of the witness's possible bias and prejudice and because the witness was on probation at the time of these events, defense counsel in *Davis* sought to capitalize on the witness's fear of being considered a suspect in this crime, as well as his fear that unfavorable testimony might affect his probationary status. *Id.* at 311, 94 S.Ct. 1105.

However, unlike the defendant in *Davis* who explained how the witness's juvenile adjudication would be used to impeach the witness, Defendant failed to offer any such explanation to the trial court. A party is "limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal." *Taylor v. State,* 710 N.E.2d 921, 923 (Ind.1999). Because Defendant did not propose the evidence on the basis that it tended to demonstrate that Moody was testifying in exchange for favorable treatment by the State, he has waived this claim. *See Ogle v. State,* 698 N.E.2d 1146, 1151 (Ind.1998) (holding that the defendant may not state one ground at trial and another on appeal).

### B

We now turn to Defendant's second argument on appeal that was presented to the trial court during his offer to prove. Defendant argued that because Moody's juvenile adjudication involved a crime of dishonesty and because he was considered one of two key witnesses in the State's case, the record should be admitted for impeachment purposes. Defendant again relies on Davis to argue admissibility of Moody's juvenile record on this basis; however, this reliance is misplaced in several respects.

First, contrary to Defendant's contention, and unlike the defendant in *Davis*, Moody's testimony did not provide the sole and crucial link in the State's case against Defendant.[14] There is some authority that where the juvenile is the only witness on whose testimony the State depends for the conviction of the defendant, juvenile records should be admitted. *Jones v. State,* 249 Ind. 621, 627, 232 N.E.2d 587, 590 (1968) (Jackson, J. concurring). Here, however, Moody was not the State's only identification witness. Nicole Phipps was the State's principal identification witness because she provided eyewitness testimony to the murder.

Second, in *Davis,* the witness had provided deceptive testimony by denying that law enforcement officials had ever questioned him. This testimony went unchallenged due to the trial court's exclusion of the juvenile record. *Id.* at 313–14, 94 S.Ct. 1105. Conversely, there was nothing deceptive about Moody's testimony regarding his juvenile adjudication or encounters with law-enforcement officials. On direct examination, Moody explained that his earlier statement to Detective Meriweather was probably more reliable than his trial testimony because he had been "locked up" for a long time since giving it. Not only did Moody volunteer that he had been placed in a juvenile facility, but he also

---

**13.** The witness in *Davis* had been adjudicated a delinquent for burglarizing two cabins. 415 U.S. at 311, 94 S.Ct. 1105.

**14.** In providing identification testimony, Moody recalled that on the evening in question, he was on his way home after visiting Reed when he observed a white Caprice pull up in front of Reed's house. Moody did not suspect anything unusual when he observed Defendant and co-defendant Small exit the car and approach Reed's front door because he considered them regular customers. (Moody testified that he was aware that Reed sold marijuana from his home. This, he explained, accounted for the flow of traffic in and out of Reed's house.) He explained that he was able to identify Defendant with the aid of a nearby streetlight because he grew up with Defendant and he recognized the car.

voluntarily differentiated his juvenile facility from that of the Indiana Boy's School.[15]

Finally, we have held that where a party seeks to impeach a witness with evidence of prior juvenile delinquency findings, a general challenge to the witness's character, without more, is not enough. *Engle v. State*, 506 N.E.2d 3, 5 (Ind.1987) (holding that the trial court properly excluded inquiry into a witness's juvenile record where the defendant "attempted to impeach the general credibility of the witness with the finding of delinquency for particular acts," in this case, theft) (emphasis added); *Roland v. State*, 501 N.E.2d 1034, 1037 (Ind.1986) (holding that although the trial court improperly permitted reference to the witness's juvenile adjudication based on theft for impeachment purposes, there was no prejudicial effect requiring reversal); *cf. Terrell v. State*, 507 N.E.2d 633, 635 (Ind.Ct.App.1987) (holding that the trial court did not err in admitting juvenile records where counsel stated in his opening statement that the witness had "no record" when, in actuality, the witness had nine juvenile adjudications for burglary). Here, Defendant proposed no alternative purpose at trial and only offered Moody's juvenile record as a general attack on his credibility. This is insufficient.

The goal in impeachment is to discredit a witness so as to challenge the witness's believability. This is done to afford the jury, the sole judge of the credibility of a witness, a basis from which to make an informed judgment as to the weight to place on the witness's testimony. This goal was not frustrated in this case. Moody's direct testimony revealed his detention in a juvenile facility and provided the jury a basis from which to infer that Moody had been adjudicated a juvenile delinquent. This, coupled with Moody's inconsistent testimony, presented the jury with ample evidence with which to assess and weigh his credibility. A further attack on Moody's general credibility by merely disclosing his juvenile adjudication for possession of stolen property was unnecessary for a fair determination of Defendant's guilt or innocence. The trial court did not err in excluded the witness's juvenile record.

*Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

---

**15.** We note that in *Davis*, the witness boldly denied having previously had experience with police interrogation. The witness could have readily been impeached with his juvenile record to expose his prior encounter with law-enforcement officials. The United States Supreme Court held that "[i]t would be difficult to conceive of a situation more clearly illustrating the need for cross-examination." 415 U.S. at 314, 94 S.Ct. 1105. Such a need was not demonstrated here given that Moody freely revealed to the jury his detainee status. We conclude this even though we have generally held that once evidence of past convictions have been visited on direct examination, the door has been opened to explore further into these convictions on cross-examination. In *Gilliam v. State*, 270 Ind. 71, 383 N.E.2d 297 (1978), we explained that the need for such cross-examination manifests itself when the "accused or a defense witness has made a deceptively incomplete disclosure of his criminal record." *Id.* at 301. We find nothing deceptive about Moody's disclosure that he had been adjudicated a delinquent. His reference to being "locked up" stemmed from attempting to explain why he could not accurately recall the events of that evening. Such a "tangential reference" to a criminal history does not confer upon the cross-examiner exploration rights into the details of that criminal history. *Green v. State*, 451 N.E.2d 41, 43 (Ind.1983) (holding that where a defendant attempts to explain his actions and reveals his parolee status on direct examination, the specific reason for his parole could not have been enlightening to the jury and therefore was not relevant).