Thedell A. POLK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0206–CR–447.

Court of Appeals of Indiana.

March 4, 2003.

Sarah L. Nagy, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hoddap–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Thedell A. Polk appeals his convictions for robbery, as a class B felony; confinement, as a class B felony; and theft, as a class D felony; as well as the determination that he is an habitual offender.

We affirm in part, reverse in part, and remand.

### ISSUE

1. Whether Polk was denied his right to effectively cross-examine a witness.

2. Whether Polk's convictions for robbery and confinement violate double jeopardy provisions of the Indiana Constitution.

3. Whether the evidence is sufficient to support Polk's convictions.

4. Whether the trial court erred in sentencing Polk, including the habitual offender portion of his sentence.

### FACTS

On October 28, 2001, Toriono Johnson received a telephone call inviting him to Janice Kelly's house. Johnson and Gordon Armour drove to Kelly's house. Only Johnson went inside. Kelly, Polk and Ladarrin Roberts were at the house playing cards. Johnson sat down at the table. Polk stood up, pulled out a handgun, and hit Johnson on the head with the gun. Johnson fell to the floor and Polk asked him whether he had any money. Johnson said that he did not have any money. Polk checked Johnson's pockets and took approximately $600 from Johnson, while Johnson remained on the floor.

Then Armour walked in the back door of the residence. Polk left through the back

door. Roberts pulled Johnson from the floor by his collar. Johnson was bleeding from a wound to his head. Armour saw Johnson on the floor bleeding and saw a gun on the table. When Armour turned around everyone had left the residence. Armour returned Johnson's car to Johnson's home.

Johnson went to a nearby bar, where the police were called. Police discovered Johnson, dazed and bleeding, in the bar parking lot. Johnson said that he had been struck in the head with a gun and robbed. Johnson saw Polk in a car that drove by the parking lot. The police stopped the car, and Johnson identified Polk as the person who struck and robbed him. Johnson's head wound was treated at the hospital.

At the trial, Johnson acknowledged that at a previous hearing, while under oath, he had given a different version of the events than that he attested to at trial. He stated that he did not want to be in court and did not want to testify against Polk.

After a trial by jury, Polk was convicted as noted above. In a bifurcated proceeding, the jury determined that Polk was an habitual offender. Polk was sentenced to concurrent twenty-year terms of imprisonment for the robbery and the confinement convictions. He was sentenced to a concurrent three-year term for the theft conviction. Pursuant to the habitual offender finding, a twelve-year term was appended to the robbery conviction for a total of thirty-two years.

## DISCUSSION

1. *Cross-examination*

■ Polk contends that his Sixth Amendment right to confrontation through cross-examination was violated because the State failed to disclose the existence of a statement by Ladarrin Roberts made to Officer Rayford until after Roberts had completed his testimony. Polk insists that the trial court erred by allowing Officer Rayford to testify as to Roberts' statement, thereby impeaching Roberts.

Substantial evidence of the events was presented at trial before Roberts and Officer Rayford testified. Johnson testified to the events implicating Polk as described in FACTS. Armour testified that he saw Polk and Roberts at the house, saw Johnson on the floor, and saw blood on Johnson, but that he did not see the incident. A police officer testified that he responded to a call and discovered Johnson dazed and bleeding in the bar parking lot. Johnson told the officer that Polk had struck him with a gun. Another officer testified to finding Johnson in the bar parking lot "with blood coming down the side of his head." (Tr. 77). Johnson told that officer that Polk had struck him and taken his money.

Later, the State called Roberts as a witness. Roberts testified that he played cards with Polk and Johnson on that day; however, he stated that he did not see any incident. He testified that he had stopped playing cards to go upstairs, and in his absence everyone left. The deputy prosecutor then queried Roberts about statements he made to Officer Rayford after the incident. Roberts admitted to having spoken to Officer Rayford when he heard that someone had been arrested. He said that he spoke to Officer Rayford because he knew him. Roberts testified that he told Officer Rayford the truth, but he denied telling Officer Rayford that he had observed anything happen. Roberts testified that he had spoken to Officer Rayford only to inform him that he did not know anything. After cross-examination of Roberts, wherein he maintained that he had not observed any incident, he was excused as a witness.

Immediately after Roberts' testimony, the State moved for permission to use Officer Rayford, who had not been listed on a witness list, as a rebuttal witness and to place into evidence Officer Rayford's notes summarizing Roberts' statements to him. Polk's counsel objected. Counsel argued both that Officer Rayford was not listed as a potential witness and that she had not been provided with the statement.[1]

With a limiting admonition[2] to the jury, the trial court allowed Officer Rayford to testify about the representations Roberts made to him indicating that the incident had occurred in substantially the manner described by Johnson in his testimony. Prior to Officer Rayford's testimony, the court admonished the jury:

> Ladies and Gentlemen, Officer Rayford is being called by the State for the limited purpose of impeaching the prior witness, Mr. Roberts['] testimony and Officer Rayford's testimony may be considered by you only in deciding the weight to give to Mr. Roberts' testimony and not as substantive evidence.

(Tr. 146).

Subject to reasonable limitations, "[a] defendant's Sixth Amendment right of confrontation requires that the defendant be afforded an opportunity to conduct effective cross-examination of State witnesses in order to test their believability." *Logan v. State*, 729 N.E.2d 125, 134 (Ind.2000). Although Polk's counsel was not aware of the statement when she examined Roberts, under the circumstances, it is difficult to perceive any damage to Polk's Sixth Amendment rights. Roberts testified that he did not observe anything happen between Polk and Johnson. It is unlikely that Polk would have used Roberts' statement to Officer Rayford to develop and underscore the State's evidence. However, if the statement or the existence of the statement could have altered Polk's cross-examination, he does not favor us with an explanation of such. Polk argues only that it was a technical violation, not that he sustained any specific harm.

In *Martin v. State*, 736 N.E.2d 1213, 1217 (Ind.2000), the court noted that a prior inconsistent statement may be used to impeach a witness, but may not be used as substantive evidence.[3] The court specifically noted that it is incumbent upon a defendant to request that the jury be admonished that the prior inconsistent statement can only be used to judge the

---

**1.** Except in the context of his inability to cross-examine Roberts about the statement to Officer Rayford, Polk does not raise the failure to disclose the statement as an issue. We note that the trial court and the State referred to the statement as a "supplement" consisting of a summary of the matters Roberts discussed with Officer Rayford, and speculated that the notes might not constitute discoverable material. After reviewing the report by Officer Rayford, the trial court noted that portions were written as if a substantially verbatim account of Roberts' statements. The trial court stated that "the prudent thing for the State to do to avoid these kinds of problems is to produce portions of supplements that are a mixture of substantially-verbatim and narrative work product." (Tr. 140–41). The trial court insured that Polk's counsel was given a copy of the statement, and offered counsel an opportunity to interview Officer Rayford. The record does not indicate that the statement was entered into evidence.

**2.** In *Martin v. State*, 736 N.E.2d 1213, 1218 n. 8 (Ind.2000), the court distinguished between limiting admonitions, given prior to admission of evidence, and limiting instructions, given after admission of evidence.

**3.** The court noted that the defendant in *Martin* did not claim a violation of the requirements of Indiana Evidence Rule 613. *Martin*, 736 N.E.2d at 1217 n. 7. Here, in a footnote within his brief, Polk observes without argument that the requirements of Rule 613 were not met.

credibility of the witness. *Id.* The admonishment was given in the present case.

Also, the court in *Martin* stated, "[e]ven assuming that the trial court erred in admitting the prior inconsistent statement, we disregard it as harmless unless it affects the substantial rights of a party." *Id.* at 1218. The court noted that no reversible error occurred in light of the other evidence of guilt. Here, as outlined above, other substantial evidence of Polk's guilt was properly admitted.

Polk failed to present reversible error with regard to the impeachment evidence offered through Officer Rayford.

### 2. Double Jeopardy

■ Polk contends that his convictions for robbery and confinement violate double jeopardy. Polk contends that there is a reasonable possibility that the same evidence was used to obtain both convictions. *See Richardson v. State,* 717 N.E.2d 32 (Ind.1999); *see also Guyton v. State,* 771 N.E.2d 1141, 1142–43 (Ind.2002).

■ Article 1, § 14 of the Indiana Constitution states, "No person shall be put in jeopardy twice for the *same offense.*" (emphasis added). "Indiana's Double Jeopardy Clause prevent[s] the State from ... [proceeding] ... against a person twice for the same criminal transgression." *Hopkins v. State,* 759 N.E.2d 633, 639 (Ind.2001) (quoting *Richardson,* 717 N.E.2d at 49). Our supreme court has determined that two or more criminal offenses are the same offense if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another

challenged offense." *Richardson,* 717 N.E.2d at 49. Both the statutory elements and the actual evidence tests are part of Indiana's double jeopardy analysis. *Id.* Polk recognizes that the statutory or essential elements are not the same; thus, his argument rests upon the actual evidence test.

■ "Confinement is not a lesser included offense of robbery." *Hopkins,* 759 N.E.2d at 639. Polk, however, contends that the confinement that occurred here was not greater than that inherently necessary to rob someone. *See Harris v. State,* 716 N.E.2d 406, 412 (Ind.1999) (separate transgression when confinement greater than necessary to commit robbery). Under the actual evidence test, the evidence presented at trial is examined to determine whether proof of each of the challenged offenses was established by separate and distinct evidence. *Thy Ho v. State,* 725 N.E.2d 988, 991 (Ind.Ct.App. 2000). "To show that the challenged offenses constitute the 'same offense,' the defendant has the burden to show a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The possibility must not be speculative or remote. *Id.*

In *Thy Ho,* we determined that the convictions for robbery and confinement did not offend double jeopardy considerations under the statutory elements test or the actual evidence test because one victim was confined at various points by different means and beyond the scope of the confinement inherent in a robbery. *Id.* 992–993.[4] In *Hopkins,* the robbery and confine-

---

4. In the present case, as to robbery, the State was required to prove that 1) Polk 2) while armed with a deadly weapon 3) knowingly or intentionally 4) took money from 5) Johnson 6) by putting Johnson in fear or by using or threatening the use of force. Ind.Code § 35–

ment convictions rested upon evidence of separate transgressions. *See Hopkins*, 759 N.E.2d at 639–40. The victims were forced into the basement at gunpoint where money was taken from them. While one defendant held the victims at gunpoint in the basement, the other defendant ransacked the upstairs taking drugs. *Id.* In finding no double jeopardy violation, the court noted that the episode was protracted in nature and that the confinement had been completed when the victims were forced into the basement at gunpoint, prior to the taking of money and later the drugs. *Id.* at 640. *See also Boatright v. State*, 759 N.E.2d 1038, 1043–44 (Ind.2001) (robbery and confinement convictions based upon separate transgressions: forcing clerk to backroom for money from safe, and later taking money from clerk's purse).

In *Vanzandt v. State*, 731 N.E.2d 450, 454–56 (Ind.Ct.App.2000), *trans. denied*, this court determined that the defendant's robbery and confinement convictions did violate double jeopardy tenets. The evidence in *Vanzandt* indicated that the only force or threat of force by the defendant was that necessary to accomplish the robbery. *Id.* The evidence revealed that the defendant held the victims at gunpoint, demanded that the victims lie on the floor, allowed one victim to assist him while he took money from a cash register, and then fled in one victim's car. *Id.*

Here, the actual evidence disclosed that Polk struck Johnson on the head with the gun, knocking him to the floor. While Johnson was prone and Polk held the gun in his hand, Polk demanded money and took money from Johnson's pocket. Although at the trial Johnson agreed on redirect examination that he was placed in fear and did not believe that he could leave while Polk held the gun in his hand, the jury was not presented with evidence that the confinement was greater than that necessary to accomplish the robbery. The evidence reveals only that the one confrontation occurred that resulted in Polk demanding and taking money from Johnson. The State failed to prove that the confinement was any greater than that necessary to accomplish the robbery. Consequently, viewing the actual evidence, there exists a reasonable possibility that the robbery and confinement convictions are supported by the same evidence of the same transgression.[5] The confinement conviction must be vacated.

### 3. *Sufficient Evidence*

■ Polk contends that the incredible dubiosity rule should apply because Johnson and Roberts testified at the trial that they had told different versions of the events at a hearing prior to trial.[6]

---

42–5–1; *see also Thy Ho*, 725 N.E.2d at 991. As to confinement as a class B felony, the State was required to prove that 1) Polk 2) while armed with a deadly weapon 3) knowingly or intentionally 4) confined 5) Johnson 6) without Johnson's consent. Ind.Code § 35–42–3–3.

**5.** We note that Polk does not argue that his convictions for theft and robbery violated the tenets of double jeopardy. In *Thy Ho*, the theft and robbery convictions did not violate double jeopardy because separate victims and thefts were identified. *Id.* at 992. Here, only one act of theft occurred as to one victim. It

is apparent in our review of the robbery and confinement issue raised by Polk that a reasonable possibility exists that the actual evidence upon which the robbery conviction rests also supports the theft of Johnson's money. Thus, we order vacation of the theft conviction as well.

**6.** Polk did not provide a transcript or summary of the testimony at the previous hearing. However, from pretrial discussions and Johnson's testimony, it is evident that Johnson testified at the hearing in a manner inconsistent with Polk's guilt.

"In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Robertson v. State*, 765 N.E.2d 138, 139 (Ind.2002). Pursuant to the narrow limits of the "incredible dubiosity" rule, a reviewing court may infringe upon a jury's function to determine the credibility of witnesses. *Dillard v. State*, 755 N.E.2d 1085, 1089 (Ind.2001). Application of the rule to reverse a conviction is limited to the circumstances where a sole witness presents inherently improbable testimony and the conviction is not supported by any circumstantial evidence. *Id.* "[I]nherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony . . . ." is that which "is so incredibly dubious . . . that no reasonable person could believe it." *Id.* (citations omitted).

Polk argues that because both Johnson and Roberts offered testimony at trial different from their testimony at a previous hearing, their testimony should be considered dubious. Here, the jury was presented with evidence that Johnson had testified at a hearing prior to trial that the incident did not occur and had done so because he did not believe Polk should go to jail for the incident. At trial, Johnson also stated that he did not want to testify against Polk and that he had been pressured by Polk's relatives to testify in Polk's favor at the hearing. However at the trial, Roberts did not testify that his testimony was different than that given at a previous hearing. As noted above, Roberts' trial testimony was not consistent with the remarks he made to Officer Rayford, but there is no indication that those remarks were made under oath. The jury was presented with the evidence of inconsistencies. *See White v. State*, 706 N.E.2d 1078, 1080 (Ind.1999) (incredible dubiosity rule did not apply where seven witnesses testified and circumstantial evidence supported convictions even though three witnesses provided different information after being offered incentives; jury was presented with information about the incentives).

Here, the incredible dubiosity rule is inapplicable. At trial, Johnson provided evidence that Polk struck him with the gun, aimed the gun at him, took his money, and that he walked to a nearby bar for assistance. Two officers corroborated a portion of Johnson's testimony when they testified that they discovered Johnson in the bar parking lot, bleeding from a head wound. Armour corroborated Johnson's testimony that a gun was present and that Johnson was lying on the floor bleeding. Because the convictions do not rest on the testimony of one witness, and corroborative and circumstantial evidence exist, the incredible dubiosity rule is inapplicable. *See Dillard*, 755 N.E.2d at 1089.

### 4. *Sentencing and Habitual Offender*

Polk argues that his sentence is manifestly unreasonable because of irregularities with regard to the habitual offender enhancement. Effective January 1, 2003, Indiana Appellate Rule 7(B) no longer contains the phrase "manifestly unreasonable." It now provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B). Because the rule is directed to the reviewing court, the amendment is applicable to review after January 1, 2003, even though the sentence was imposed prior to that date. *Kien v.*

*State,* 782 N.E.2d 398, 416 (Ind.Ct.App. 2003).

Polk presents two arguments as to the habitual offender enhancement: 1) he was not represented by counsel during the preliminary matters as to one set of underlying convictions; thus, the convictions are constitutionally infirm,[7] and 2) he was a juvenile when he committed the acts to which he pleaded guilty after waiver to adult criminal court in both sets of the convictions underlying the habitual offender determination; thus, public policy should prevent an habitual offender determination where the predicate offenses occurred while the defendant was a minor.

■ First, we examine Polk's allegation that one set of underlying convictions was constitutionally infirm because he was not represented by counsel during preliminary matters prior to his guilty plea. In 1996 when Polk was 16, he was charged with several felony counts. The Chronological Case Summary ("CCS") from the adult court proceedings[8] indicates that Polk appeared pro se at a preliminary proceeding that set the matter for an initial hearing and for appointment of counsel.

The initial hearing is not a critical stage of the process requiring the presence of counsel. *Ridenour v. State,* 639 N.E.2d 288, 291 (Ind.Ct.App.1994). We observe that the CCS indicates only that Polk appeared pro se prior to the initial hearing. Polk was represented by counsel when he pleaded guilty to two class D felony charges, battery and resisting law enforcement. The record does not reveal any constitutional impropriety as to the convictions; thus, Polk cannot prevail as to his first argument.

■ We turn to Polk's public policy argument that an habitual offender enhancement should not rest solely on underlying felony convictions that occurred while the defendant was a minor. The State argues that the habitual offender statute exempts the use of certain convictions; thus, by failing to exclude felony convictions of minors in adult courts, the legislature did not intend such exemptions. *See* Ind.Code § 35–50–2–8.

In *Rodgers v. State,* 422 N.E.2d 1211, 1215 (Ind.1981), the defendant asserted that felony convictions, subject to the then in place sentencing provisions allowing minors to be sentenced to a period of less than one year for a felony, should not support an habitual offender determination. The court rejected the contention that felonies sentenced pursuant to the minor sentencing provisions did not constitute felonies as defined within the habitual offender statute. *See also Anglin v. State,* 490 N.E.2d 721, 723–24 (Ind.1986) (felony conviction of minor subject to Minor's Sen-

---

7. Polk did not argue at the bifurcated habitual offender proceeding that one set of underlying felony convictions was constitutionally infirm; however, we note the standard for such reiterated in *Maffett v. State,* 766 N.E.2d 765, 768–69 (Ind.Ct.App.2002). Generally, the habitual offender hearing is not the appropriate forum to contest the validity of the underlying convictions unless a predicate conviction is constitutionally invalid as demonstrated by the following criteria: 1) court records on their face raise a presumption of constitutional infirmity, and 2) the infirmity is of the type that would undermine the integrity and reliability of the conviction. *Id.*

8. The record does not contain the juvenile court proceedings that implicitly resulted in Polk being waived to adult court. Polk intimates that those proceedings might have been deficient. We are unable to review those matters inasmuch as Polk did not provide documentation or an argument as to those proceedings. A bare assertion of error, not disclosed by the record, is not available for review. *Ridenour v. State,* 639 N.E.2d 288, 291 (Ind.Ct.App.1994).

tencing Act properly considered for habitual offender purposes).

Then the court in *Rodgers* addressed the defendant's appeal to the court's "conscience" with regard to the trial court's failure to grant his motion to dismiss the habitual offender information. *Id.* The defendant urged that the enhancement was "unreasonable, inequitable and contrary to the precepts of justice" because his prior auto theft was nonviolent and he characterized "the instant crime as a mere "purse-snatching," and point[ed] to the fact that he was only seventeen and twenty years old at the times his prior felonies were committed." *Id.* The court concluded:

> Just as this Court does not sit as a super-legislature to second-guess the criteria established by the General Assembly for the imposition of habitual offender penalties, neither is it our prerogative to interfere with the discretionary power of the state to invoke those penalties.

*Id.* at 1216.

Given prior pronouncements on the subject and the legislature's failure to enact legislation addressing such, we cannot say that the habitual offender determination here violates public policy.

Therefore, Polk's convictions for confinement and theft are vacated. Having found no reversible error as to the other matters raised by Polk, the judgment of conviction for robbery and the habitual offender determination are affirmed. The cause is remanded for proceedings in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

NAJAM and VAIDIK, JJ., concur.