Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 21 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KATHLEEN CLEARY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTONIO D. ROSE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1312-PC-478 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1211-PC-018

August 21, 2014

MEMORANDUM DECISION – NOT FOR PUBLICATION

**MATHIAS, Judge**

Antonio D. Rose ("Rose") challenges the Lake Superior Court's denial of his petition for post-conviction relief. On appeal, Rose presents three issues, which we restate as:

I.      Whether the post-conviction court erred in concluding that Rose's trial counsel was not ineffective for failing to preserve for appeal the issue of whether the trial court improperly limited Rose's cross-examination of the State's key witness regarding another, unrelated burglary charge pending against that witness;

II.     Whether the post-conviction court erred in concluding that Rose's appellate counsel was not ineffective for not presenting the issue of the trial court's limitation of Rose's cross-examination of this witness; and

III.    Whether the post-conviction court erred in concluding that Rose was not deprived of due process of law when the State failed to disclose to Rose prior to his sentencing that it had reached a plea agreement with this witness in the unrelated burglary charge.

We affirm.

**Facts and Procedural History**

The facts underlying Rose's convictions were set forth in our memorandum decision in Rose's direct appeal:

On July 14, 2007, Larry Williams was walking by himself in Gary when he encountered Rose and William Pope, who intended to rob Williams. Pope struck Williams, and Williams pulled out a knife. Pope struck Williams again, and Williams fell to the ground. Pope kicked Williams in the head repeatedly, and Rose kicked Williams' body several times. Rose also "stood on top of" Williams and hit him four times in the jaw. Finally, Pope took $12 from Williams, and Pope and Rose left the scene. Williams died as a result of his injuries.

Rose v. State, No. 45A03-0808-CR-419, 2009 WL 588925, slip op. at 2 (Ind. Ct. App. Mar. 6, 2009) (record citation omitted).

As a result of this incident, on December 8, 2007 the State charged Rose with murder, felony murder, and robbery. On May 29, 2008, a jury found Rose guilty of felony murder, robbery, and the lesser included offense of aggravated battery, but the trial court entered judgment only on the felony murder conviction and sentenced Rose to fifty-six years executed. Id.

On direct appeal, Rose argued that there was no evidence that he knowingly or intentionally robbed Williams and that his felony murder conviction thereby could not stand. We rejected this argument, noting that both Pope's testimony and Rose's own testimony indicated that they had intended to rob Williams. Id., slip op. at 3. Rose also claimed that the trial court's sentence constituted an abuse of discretion and was disproportionate to his role in the crime. We again rejected these claims, noting that Rose was a willing and active participant in a brutal, fatal beating of a man for $12. Id., slip op. at 4.

Rose subsequently filed a *pro se* petition for post-conviction relief on November 19, 2012. Rose filed an amended petition, by counsel, on May 28, 2013. The post-conviction court held an evidentiary hearing on Rose's petition on July 25, 2013, and issued findings of fact and conclusions of law on November 14, 2013, denying Rose's petition. Rose now appeals.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners

a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## I. Assistance of Trial Counsel

Rose's first claim is that his trial counsel was ineffective. In Timberlake v. State, our supreme court summarized the law regarding claims of ineffective assistance of trial counsel as follows:

4

A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

In the present case, Rose claims that his trial counsel's performance was deficient because he failed to properly preserve for appeal the issue of whether the trial court erred in limiting the scope of Rose's cross-examination of Pope. For purposes of our discussion, we assume *arguendo* that Rose's trial counsel failed to properly preserve the issue for appeal, and we can instead focus on the question of whether the trial court erred in limiting the scope of Rose's cross-examination of Pope. Simply said, if the trial court did not err in limiting Rose's cross-examination of Pope, then the fact that Rose's trial

5

counsel did not preserve the issue for appeal is irrelevant, because even if the issue had been preserved, Rose would not have prevailed on direct appeal.

Rose argues that the trial court erred by limiting the scope of his cross-examination of Pope with regard to an unrelated Class B felony burglary charge that was pending against Pope. Specifically, Pope was arrested on October 17, 2007, shortly after the attack in this case, and charged as a juvenile with Class C felony burglary. Then, on May 13, 2008—shortly before the trial in the present case—the juvenile burglary case was transferred to adult court, and the charge was amended to allege Class B felony burglary.[1]

The trial court granted the State's pre-trial motion in limine to prevent Rose from asking Pope about this unrelated charge. The State explained in a pre-trial hearing that it had no intention to give Pope any favorable consideration in the burglary case in exchange for his testimony against Rose. Indeed, the prosecuting attorney noted that Pope had already received a bargain for agreeing to plead guilty and testify against Rose in the murder case, and that "there [was] going to be no more consideration for his testimony [against Rose]." Tr. pp. 109-10.

Importantly, although Rose was prevented from presenting to the jury any evidence of the pending burglary charge, he was able to cross-examine Pope regarding the plea agreement he had with the State in the murder case. Under cross-examination, Pope admitted that he had made a plea agreement in exchange for testifying against Rose

---

[1] As discussed below, Pope later pleaded guilty to the lesser-included charge of Class D felony theft on July 15, 2008, just two days before Rose was sentenced.

6

and that he received a sentence of only thirty years, despite his more active, and arguably more culpable, role in the victim's death.

Rose now claims that the trial court's ruling limiting his cross-examination of Pope regarding the burglary charge was a violation of his constitutional rights to cross-examine the witnesses against him. In support of his argument, Rose cites Davis v. Alaska, 415 U.S. 308 (1974).

In Davis the defendant was convicted of burglary and grand larceny after the trial court had prohibited him from cross-examining a key State witness with regard to the fact that the witness was on probation for a juvenile adjudication for burglary. The witness had identified Davis as one of the men he had encountered and spoke to as they stood next to a car near the scene of the burglary. The defense wanted to show that the witness's fear of having his probation revoked influenced his testimony; that is, the defense wanted to capitalize on the witness's fear of being considered a suspect and his fear that unfavorable testimony might affect his probationary status. The trial court had prevented Davis from questioning the witness in this regard, citing an Alaska rule prohibiting the admission of such juvenile records in a court proceeding. Because of the exclusion of this evidence, the witness provided deceptive testimony by denying that law enforcement officials had ever questioned him, and his testimony went unchallenged due to the trial court's exclusion of the witness's juvenile record. The United States Supreme Court granted certiorari in Davis and held that the trial court's act of limiting Davis's cross-examination of the juvenile witness regarding this impeaching evidence constituted

a denial of Davis's Sixth Amendment right to confront the witnesses against him. Id. at 317-18.

Rose claims that Davis supports his claim that he had a Sixth Amendment right to question Pope regarding the pending burglary charge against him. We, however, find Davis to be distinguishable. The witness in Davis had provided deceptive testimony by denying that he had ever been questioned by the police. Id. at 313-14. And this testimony went unchallenged due to the trial court's exclusion of the witness's juvenile record. Id. Here, however, there was nothing deceptive about Pope's testimony. See Martin v. State, 736 N.E.2d 1213, 1220 (Ind. 2000) (distinguishing Davis by noting that there was nothing deceptive about the testimony of the witness at issue regarding his adjudications or prior encounters with law enforcement).

Additionally, Rose's trial counsel was able to thoroughly cross-examine Pope regarding his involvement with the robbery and murder of Williams and the favorable treatment he had received as a result of his plea agreement with the State. Thus, the jury was well aware of Pope's biases and had the information it needed to question his credibility. Exposing the jury to the fact that Pope also had another pending charge would not have made his testimony any less credible or his bias any greater. In this respect, the facts of the present case are directly on point with those in Logan v. State, 729 N.E.2d 125 (Ind. 2000).

In Logan, the trial court excluded evidence regarding the juvenile record of a State's witness. On appeal, the defendant claimed that this was in violation of his Sixth Amendment right to confront this witness, citing Davis. Our supreme court rejected this

8

claim, noting that defense counsel was able to "vigorously" cross-examine the witness and impeach him regarding lies he had told to the police, his involvement with the crime, and his bias associated with his plea agreement. Id. at 134. The Logan court also rejected Logan's claim that the admission of the juvenile record would have shown "extra incentive" for Harrison to testify against him:

> However, unlike this case, in Davis the trial court's decision not to allow the introduction of a witness's juvenile adjudication *precluded the defendant from presenting any evidence of bias*. Such is not the case here. Logan was able to present evidence of Harrison's alleged bias to the jury. We fail to see how this alleged extra incentive was necessary for a fair determination of guilt or innocence. The jury was aware that Harrison received favorable treatment from the State in exchange for his testimony against Logan. The juvenile adjudication would have added little, if anything, to Logan's impeachment of Harrison.

Id. at 134-35 (emphasis added).

The same is true here. Unlike in Davis, Rose was able to present ample evidence of Pope's bias. And we fail to see how evidence regarding the pending, unrelated burglary charge against Pope would added much, if anything, to Rose's impeachment of Pope. As in Logan, the jury was well aware that Pope had received favorable treatment from the State in exchange for his testimony against Rose.[2]

Following Logan, we conclude that the trial court did not err in limiting the Rose's cross-examination of Pope regarding the pending, unrelated burglary charge. Therefore,

---

[2] For this reason, we also find Smith v. State, 721 N.E.2d 213 (Ind. 1999), cited by Rose, to be distinguishable. In Smith, the court held that the trial court had erred by preventing the defendant from cross-examining two of the State's witnesses regarding unrelated charges pending against them. Id. at 219-20. In Smith, this prevented the defendant from exposing the biases of these witnesses. See id. Here, however, Rose had already clearly established the Pope's bias and his motivation to testify against Rose. Thus, we find this case more similar to Logan than to Smith.

Rose's trial counsel's performance was not deficient for failing to preserve this issue for appeal, because even if it had been preserved, Rose would not have been successful on direct appeal. Accordingly, the post-conviction court did not clearly err in rejecting Rose's claim of ineffective assistance of trial counsel.

## II. Assistance of Appellate Counsel

Rose also claims that, if his trial counsel did properly preserve the issue of the trial court's limitation of his cross-examination of Pope, then his appellate counsel was ineffective for failing to present this issue on direct appeal. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel. Harris v. State, 861 N.E.2d 1182, 1186 (Ind. 2007). That is, the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for the deficient performance of counsel the result of the proceeding would have been different. Id.

Here, Rose's claim of ineffective assistance of appellate counsel is based wholly on his claim that the trial court erred in limiting his cross-examination of Pope regarding his pending, unrelated burglary charge. However, we have already concluded above that the trial court did not err in limiting Rose's cross-examination of Pope. Therefore, even if Pope's appellate counsel had presented this issue on appeal, it would not have been successful. Rose's appellate counsel cannot be said to have been ineffective for failing to present a claim that would not have been successful. Accordingly, the post-conviction

court did not clearly err in rejecting Rose's claim of ineffective assistance of appellate counsel.

### III.  Denial of Due Process

Lastly, Rose claims that he was denied the due process of law at the sentencing when the State failed to inform him that, in the unrelated burglary case, Pope agreed to plead guilty to the lesser offense of Class D felony theft on July 15, 2008, just two days prior to Rose's sentencing.  Rose does not couch this argument in terms of ineffective assistance of counsel.  Instead, his argument is simply that the State's failure to disclose Pope's plea to Class D felony theft constitutes a Brady violation that deprived him of due process.

> In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution."  373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963).  To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial.  Id.; United States v. Bagley, 473 U.S. 667, 685, 105 S. Ct. 3375, 3385, 87 L.Ed.2d 481 (1985).  Evidence is "material" only if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Bagley, 473 U.S. at 685, 105 S. Ct. at 3385, 87 L.Ed.2d at 496.

Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998).

Here, even if we assume that the prosecution "suppressed" the evidence of Pope's conviction,[3] we still cannot say that Rose has established a Brady violation. This is so because we agree with the post-conviction court that Rose has not established that the evidence of Pope's plea agreement was "material," i.e., that there was a reasonable probability that, had Pope's plea been disclosed to the defense, that the result of the proceeding—Pope's sentencing hearing—would have been different.

Rose claims that the information regarding the plea in the burglary case is proof that Pope did, in fact, receive favorable consideration in that case for testifying against Rose in the murder case. However, the post-conviction court clearly rejected this, finding that there was "no evidence that Pope received a deal in his burglary case in exchange for his testimony against Rose in the murder trial." Appellant's App. p. 96. Rose points us to no evidence that would cause us to conclude that this finding was clearly erroneous. The simple fact that Pope later pleaded guilty to a lesser offense in the burglary case does not prove, *ipso facto*, that the State agreed to this plea because of Pope's testimony against Rose in the murder case.

But even if Pope's plea to Class D felony theft in the burglary case was evidence of a *quid pro quo* with the State for his testimony in Rose's case, we still fail to see how this would have benefited Rose in such a manner as to lead to a different sentence. The

_____

[3] Rose notes that his trial counsel was unaware of Pope's plea in the burglary case until shortly before the post-conviction hearing. We would note, however, that conviction records are generally a matter of public record and should be relatively easy to obtain. And we note that, here, Rose was well aware of the pending charges against Pope in the burglary case. Thus, this case is unlike State v. Hollin, 970 N.E.2d 147, 153-54 (Ind. 2012), where the court held that the State had committed a Brady violation by not disclosing to the defendant that the State's witness had other pending charges against him and a pending petition to revoke his probation.

fact that Pope pleaded guilty to a lesser sentence in a wholly unrelated crime has little to no bearing on his role in the murder of Williams. As such, we cannot say that this information would have been significantly mitigating at Rose's sentencing.[4]

Because the information regarding Pope's plea agreement in his burglary case was neither favorable nor material, there was no Brady violation even if we assumed the State "suppressed" this evidence. Therefore, the post-conviction court did not clearly err in denying Rose's claim of a Brady violation when the State did not inform him that Pope had pleaded guilty immediately before Rose's sentencing hearing.

**Conclusion**

The post-conviction court did not clearly err in rejecting Rose's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel because the trial court did not violate Rose's constitutional rights to confrontation when it limited his cross-examination of Pope with regard to Pope's pending, unrelated charge for burglary. Nor did the post-conviction court clearly err when it concluded that there had been no Brady violation when the State did not inform Rose that Pope had pleaded guilty in the unrelated crime before Rose's sentencing hearing.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

[4] We note that Rose does *not* claim that there was a Brady violation by the fact that Pope's plea in the burglary case was not disclosed to the defense before trial. At the time of the trial, Pope had not yet pleaded guilty in the burglary case. Thus, Rose can only claim that a Brady violation occurred with regard to his sentencing hearing.