**Fred M. INGRAM, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 48S00–9811–CR–718.

Supreme Court of Indiana.

Sept. 3, 1999.

Mitchell P. Chabraja, Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted Fred M. Ingram, Jr. of the murder of Travis Teague. He was also found to be a habitual offender and was sentenced to sixty years for murder, enhanced by thirty years for the habitual enhancement, for a total sentence of ninety years imprisonment. In this direct appeal he contends that the trial court erred by admitting at trial a partial transcript from a bond hearing held several weeks before trial. We affirm the trial court.

### Factual and Procedural Background

On the morning of March 29, 1998, Teague, Rodrico Malone, Cornelius Elliott, and George Miles were all on the front porch of Malone's home when a car pulled up. Ingram and his brother Terrill exited the car while Nakia Isbell remained inside. Ingram was carrying a pistol. The brothers believed that within the past month or two Teague had stolen Terrill's car and had also robbed Ingram.

Malone told the Ingram brothers to leave because he did not want any trouble, but the two continued toward the porch. All witnesses testified that Teague started to flee, but they offered somewhat different accounts of what followed. According to Terrill, Ingram "had walked up to [Teague], and [Teague] had raised up, started to run and slipped and fell. And as he slipped and fell, [Ingram] was upon him, as he was getting up, gun had just went off." Isbell testified that Teague initially ran from Ingram and fell on the porch where Ingram caught up with him, and "ran into" or "bumped" Teague immediately before "the·gun went off. . . ." On the other hand, Elliott testified that Teague ran from Ingram, fell down, and got back up, and then Ingram shot him. Malone's version was that Teague "slipped and fell, that's when [Ingram] picked him up, and he went to turn him around, and then next, you know, he went to hit him with the gun, and it just went

off." Finally, Miles testified that he did not see Teague shot. Some witnesses also reported that, after the shooting, Ingram stated "I didn't mean to." The pathologist testified that Teague died as a result of a single gunshot wound to the back of the head.

Ingram was charged with murder. By all accounts Ingram fired the bullet that killed Teague. The issue at trial was whether Ingram was guilty of murder, a knowing or intentional killing. The jury was also instructed on the lesser included offenses of voluntary manslaughter and reckless homicide, but convicted him of murder.

### Admission of Bond Hearing Transcript

Over Ingram's objection, the trial court admitted at trial a partial transcript from Ingram's bond hearing held several weeks earlier. The admitted portion of the transcript dealt with questioning of Terrill by Ingram's counsel during which Ingram interrupted at several points. It reads in its entirety:

Q. Mr. [Terrill] Ingram, Mr. Williams [the prosecutor] said how far was the gun when he [Fred] shot him. Did you make a conclusion that he actually shot him or that the gun went off?

A. What you mean, the gun just ... It just went off.

Q. Had there been some physical contact between Mr. Ingram and this person, Travis Teague, before this gun went off? You understand my question?

A. Yes, I understand it. 'Cause when he had slipped and fell, he was about to get up, he was up on him, so ...

Q. So from what you could tell, was there physical contact or was there not?

A. Yes. Yes.

Q. What was the physical contact?

A. While he was getting up? As he was getting up, the gun just went off.

FRED INGRAM: Why he acting scared. Man, you about ready to make me mad, man, 'cause he seen it. He seen it.

THE COURT: Mr. Ingram. Settle down, sir.

FRED INGRAM: Okay. I'm sorry, Your Honor.

THE COURT: Take it easy.

FRED INGRAM: But I just want him to tell the truth. These people can't hurt him. Just tell the truth!

A. I am. I am telling the truth.

FRED INGRAM: Tell them I pushed him and the gun went off!

MR. WILLIAMS: Judge!

THE COURT: Mr. Ingram.

MR. WILLIAMS: I guess I'm wondering who's testifying. Are you upset 'cause he's not telling what he want you, you want him to hear?

FRED INGRAM: Naw. Just tell the truth, I won't say nothing. Tell him I pushed him and the gun went off.

THE COURT: Mr. Ingram, don't tell him what to say. Just keep quiet and let Mr. Godfrey be your lawyer.

FRED INGRAM: He's got to tell the truth! He know what happened.

Citing Evidence Rule 801(d)(1)(B), Ingram contends that Terrill's statements in this transcript are inadmissible as hearsay. However, he did not object at trial on the basis of hearsay and cannot raise a hearsay argument for the first time on appeal. *See* *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998). In any event, Terrill's statements were consistent with his testimony at trial. More importantly, as explained at trial, the point of the transcript was not Terrill's statements, but rather Ingram's effort to shape his brother's testimony. To the extent Ingram argues that he was prejudiced by the transcript it is due to statements by Ingram himself. As to those, hearsay is not a valid objection. *See* Ind. Evidence Rule 801(d)(2)(A).

■ The principal issue is whether the transcript was properly admitted under Evidence Rules 616 and 403. Evidence Rule 616 provides that "[f]or the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." Rule 607 makes clear that a witness's credibility may be attacked by any party, including the one who called the witness. Here,

Terrill first testified at the bond hearing and then testified at trial as a witness for the State in virtually identical terms. The State sought to admit his bond hearing testimony to explain Terrill's demeanor as a witness. In an extensive discussion at trial the State argued that when Ingram did not hear his brother giving the answer at the bond hearing he wanted to hear, Ingram "starts yelling at him across a courtroom, telling him what he needs to say...." This is, in Rule 616 terms, a form of "attacking the credibility of a witness" by arguing that the witness was less forthcoming because he was intimidated by the bond hearing incident and the effects of the incident persisted through the trial.

■ Rule 616 provides for the admission of evidence showing bias or prejudice of a witness without any qualifications. However, the Rule should be read in conjunction with Rule 403's required balancing of probative value against the danger of unfair prejudice. *See* 13 ROBERT LOWELL MILLER, INDIANA PRACTICE § 616.101 (1995). The State argued at trial, and Ingram agreed, that the transcript provided the jury with Ingram's account of the shooting. As to the danger of unfair prejudice, Ingram contends that the State sought the admission of his statements in the bond hearing transcript solely to discredit him by suggesting to the jury that he was coercing his brother to lie for him.

In closing argument the prosecutor cited the bond hearing incident, apparently suggesting that it demonstrated that Ingram was subject to uncontrollable outbursts and the killing of Teague was the product of a similar lack of control. Ingram also argues in this appeal that the bond hearing statements are prejudicial because they show his improper courtroom decorum that was underlined by admonishments from the trial court.

■ " 'Unfair prejudice' addresses the way in which the jury is expected to respond to the evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence 'to suggest decision on an improper basis....' " 12 ROBERT LOWELL MILLER, INDIANA PRACTICE § 403.102 at 284 (1995) (footnotes omitted).

Although in form Ingram did not threaten his brother at the hearing but rather told him to tell the truth, his statements also clearly conveyed anger at Terrill's testimony. The jury could infer that Ingram was outraged at his brother's failure to the describe the events accurately. The jury might as easily have concluded that Ingram was a clever manipulator subject to emotional outbursts that included the spontaneous but intentional shooting of Teague.

In short, the probative value of the bond hearing transcript is dubious and its potential for prejudicial effect is not insignificant. Nevertheless, the trial court heard extensive argument by counsel before making the requisite determination of balancing under Rule 403. Trial courts are given wide latitude to make this determination, and we review that determination for an abuse of discretion. *See, e.g., Sanders v. State,* 704 N.E.2d 119, 124 (Ind.1999); *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). The trial court did not abuse its discretion in finding that the probative value of the bond hearing transcript was not substantially outweighed by the danger of unfair prejudice.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.