**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMMERLY A. KLEE**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JESUS TORRES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1205-CR-233 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jeffrey Marchal, Judge
Cause No. 49G06-1107-FC-047079

**December 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Jesus Torres molested his fourteen-year-old step-granddaughter, M.B., when she and her family were visiting from Florida. After M.B. returned home, Torres telephoned M.B. nearly every day asking when she could come back and visit. He also discussed the abuse and apologized to M.B. Audiotapes of these conversations were made because M.B.'s father had supplied her with a tape recorder.

Torres was charged with two counts of Sexual Misconduct with a Minor,[1] a class C felony. During his jury trial, the trial court, over Torres's objection, admitted the audiotape into evidence. The trial court also sent the recording back to the jury room after deliberations had begun. Torres was convicted on one of the counts, and he now appeals, challenging the admissibility of the audiotape into evidence and the trial court's decision to send the tape to the jury room.

Concluding that the tape was properly admitted into evidence and observing that Torres agreed to have the tape sent back to the jury during deliberations, we affirm the trial court's judgment.

FACTS

M.P. was born on July 29, 1995, and lived in Florida with her family. Torres is M.P.'s step-grandfather, and she and her family visited Torres and her grandmother, Elizabeth, in Indianapolis during Memorial Day weekend in 2010. While at the house, M.P. and her younger sister, C.P., slept in the same bed as Torres and Elizabeth. The

---

[1] Ind. Code § 35-42-4-9.

girls slept with them because the room was air-conditioned.  The girls' parents slept in a different room down the hall.

That night, M.P. woke up when she felt Torres touching her breast on the outside of her shirt.  M.P. fell back to sleep, but woke up again when she felt Torres's hand on her stomach.  M.P. also felt Torres touch her skin underneath her shirt.  Torres then placed his hand down M.P.'s pants.

At some point, M.P. left the room and walked to the kitchen.  M.P. could see Torres emerge from the bedroom.  M.P. returned to the bedroom and went back to bed after Torres had walked out of the bedroom.  However, M.P. stayed awake in case Torres came back.  However, Torres never returned to the bedroom that night.

The next morning, M.P. and Torres did not speak to each other.  Later that day, M.P. and her family left and returned to Florida.  M.P. did not immediately tell anyone about the incidents with Torres because she feared her father's reaction.

Shortly after M.P. returned to Florida, Torres telephoned her on a daily basis for nearly a week.  Torres would ask M.P. how she was doing and whether she missed him.  He also asked M.P. when she might come back to Indiana and visit.  Although M.P.'s parents talked about a return trip, M.P. said that she did not want to go back.  While M.P. did not offer an explanation at the time, she eventually told her brother's friend what Torres had done to her.

After M.P.'s father learned of the incidents, he gave M.P. a tape recorder so that subsequent telephone conversations between Torres and M.P. could be recorded.  During

3

one of the calls, M.P. talked about the night that Torres had touched her. At some point, Torres asked M.P. if she would visit him again, and M.P. said that she did not know "because of what [he] did." Tr. p. 41. When M.P. asked Torres why he had touched her, Torres responded that he had done it "out of curiosity." Id. Torres then apologized and asked M.P. if she would forgive him. That call was recorded. M.P. eventually listened to the tape and placed her initials on it.

M.P. and her family moved from Florida to Peru, Indiana, in August 2010. Sometime around January 2011, M.P.'s father reported Torres to the police and spoke with a prosecutor. Although M.P.'s father had spoken with the police, Torres continued visiting the family. M.P.'s father would routinely watch the interaction between M.P. and Torres. During one of the visits, M.P.'s father overheard Torres tell M.P. that "this cannot get out, let it be" and "let's start fresh, what I did was wrong, [and] this will ruin the family if it gets out." Tr. p. 66.

The State charged Torres with two counts of sexual misconduct with a minor, a class C felony. During a jury trial that commenced on March 28, 2012, Torres objected to the admissibility of the audiotape recording of his telephone conversation with M.P. The trial court admitted the tape into evidence. While the jury was deliberating, both the State and Torres "urged the jury to listen to the [audiotaped conversation] again," and the trial court asked Torres's counsel and the deputy prosecutor whether the recording should be sent back to the jury room or whether the jury should be brought out to listen to it. Tr. p. 109.

The deputy prosecutor indicated that she was fine with providing the jury with a means of listening to the recording in the jury room. Torres's counsel agreed, specifically stating that he had "no objection to them taking it back there assuming [the prosecution] will tell [the defense] that there [is] no other information about the case on there." Id. at 110.

The prosecutor indeed informed Torres that the exhibit contained no other information on it. The trial court, again, asked both parties if they should wait for the request from the jury, or whether the exhibit should be immediately sent back. Id. at 110. The State had no preference for either approach, and Torres's counsel stated that "we can send it right now if the court would like. That doesn't bother me." Id. The trial court then provided the jury with the recording and a computer to listen to it as they were deliberating.

Torres was found guilty on one count of sexual misconduct with a minor, a class C felony, and he was acquitted on the other count. He now appeals.

DISCUSSION AND DECISION

I. Admission of Tape Into Evidence

Torres argues that the trial court erred in admitting the audiotape of the telephone conversation into evidence. Specifically, Torres contends that the tape was of poor quality, it contained no specific reference to the alleged molestation incident, and the "prejudice to Torres far outweighed any probative value of the recording." Appellant's Br. p. 7.

The admission or exclusion of evidence falls within the trial court's sound discretion, and the trial court's determination regarding the admissibility of the evidence is reviewed for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. We will only consider the evidence in favor of the trial court's ruling and the unrefuted evidence in the defendant's favor. Sallee v. State, 777 N.E.2d 1204, 1210 (Ind. Ct. App. 2002). We will affirm a trial court's ruling on the admission of evidence on any legal basis that is apparent in the record. Lampitok v. State, 817 N.E.2d 630, 639 (Ind. Ct. App. 2004).

Our Supreme Court has determined that one of the foundational requirements for admitting an audio recording into evidence is that it be of sufficient clarity as to be "intelligible and enlightening to the jury." Lamar v. State, 282 N.E.2d 795, 800 (Ind. 1972). An audiotape must also be intelligible enough to be probative of the purpose for which it is proffered. Benavides v. State, 808 N.E.2d 708, 711 (Ind. Ct. App. 2004).

In this case, the tape is clear that M.P. and Torres are specifically discussing the molestation incident. Ex. 1. For instance, M.P. asks Torres why he touched her, which was in the context of her statement that she did not want to visit Torres and her grandmother. When M.P. asked Torres why he touched her, he responded that he was curious. Ex. 1. One who listens to the tape can hear the conversation and understand it. Hence, the conversation was sufficiently clear to be enlightening and intelligible to the jury.

6

The record also demonstrates that the only modification to the recording was the removal of the sounds of a birdsong in the background. Tr. p. 42. In other words, nothing impacted the substantive contents of the conversation between M.P. and Torres. Thus, the trial court did not err in admitting the audiotape into evidence on this basis.

Notwithstanding the above, Torres also argues that the tape should have been excluded because the conversation unfairly prejudiced him. In general, relevant evidence is admissible, but it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 402, 403. To be "relevant," the evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evid. R. 401. On the other hand, "[u]nfair prejudice addresses the way in which the jury is expected to respond to the evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis." Ingram v. State, 715 N.E.2d 405, 407 (Ind. 1999).

In this case, the conversation between M.P. and Torres amounted to evidence of motive. M.P. asked Torres why he touched her, and he supplied the answer that he was "curious." Ex. 1. As a result, the evidence had great probative value and it had the tendency to make the existence of a salient fact in this case more probable. Torres has failed to show that the tape persuaded by illegitimate means, and it did not suggest to the jury that it reach its final decision on an improper basis. Ingram, 715 N.E.2d at 407. In

7

short, the tape spoke for itself. Torres told M.P. why he touched her, and he did not deny doing it. As a result, we conclude that the trial court properly admitted the audiotape of the conversation between M.P. and Torres into evidence.

## II. Sending Tape to Jurors

Torres next contends that the trial court erred in sending the recording and a computer to the jury once deliberations had begun. In particular, Torres argues that the trial court's action was unduly prejudicial and that the "prejudice was escalated by the fact that the trial court interrupted deliberations to present this exhibit in isolation." Appellant's Br. p. 7.

Notwithstanding Torres's contention, both the State and Torres "urged the jury to listen to the [audiotaped conversation] again" as they were deliberating. Tr. p. 109. As noted above, the trial court asked Torres's counsel and the deputy prosecutor if the recording should be sent back to the jury room or whether the jury should be brought out to listen to it. Id. Torres, by counsel, informed the trial court that he had "no objection to them taking it back there," if he could be assured that the tape contained no other evidence. Id. at 110.

The deputy prosecutor specifically informed the defense that the exhibit contained no other information on it, and the trial court again asked both parties if the exhibit should be sent back "right now." Id. The deputy prosecutor had no preference, and Torres's counsel agreed to "send it right now if the court would like. That doesn't bother me." Id. The trial court then provided the jury with the exhibit while they deliberated.

8

Accordingly, the evidence shows that both the deputy prosecutor and Torres wanted the jury to review the recording again before a verdict was reached. The exhibit properly aided the jury, and it was reviewed at the suggestion of both parties. As a result, Torres's claim that the trial erred in sending the tape back to the jury during deliberations fails.

The judgment of the trial court is affirmed.

BARNES, J., and RILEY, J., concur.