## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2017, 6:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Anthony Patterson, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 9, 2017

Court of Appeals Case No.
49A02-1610-CR-2258

Appeal from the Marion Superior Court

The Honorable Lisa Borges, Judge

Trial Court Cause No.
49G04-1504-MR-12984

**Mathias, Judge.**

[1] Following a jury trial in Marion Superior Court, Mark Patterson ("Patterson") was convicted of murder and determined to be a habitual offender. Patterson appeals and argues that the trial court abused its discretion when it limited his

opportunity to impeach a key witness for the State by excluding evidence regarding two of the witness's prior convictions and by excluding evidence that the witness was incarcerated at the time of trial.

[2] We affirm.

## Facts and Procedural History

[3] In March 2015, Patterson was driving his Dodge Durango on the east side of Indianapolis when he saw a man, Stanley Edmonson ("Edmonson") walking to work. Patterson gave Edmonson a ride and asked if he needed work. Edmonson told Patterson that he already had a job. When Patterson dropped Edmonson off at work, he stated that he could supply Edmonson with "pills," meaning prescription drugs, if he ever needed any, and provided Edmonson with his telephone number. Tr. Vol. II, p. 57-58. At this time, Edmonson was dating Destiny Asher ("Asher"). Asher and her friend Renetta Marcum ("Marcum") were users of various illicit drugs.

[4] Approximately two weeks later, Marcum claimed to have been beaten by her husband and in need of painkilling drugs. Remembering Patterson's claim to be able to provide "pills," Edmonson facilitated a conversation between the women and Patterson. Edmonson sent a text message to Patterson stating, "this is Stan." Ex. Vol., State's Ex. 128. Asher and Marcum, who were already under the influence of heroin, then used Edmonson's phone to send Patterson text messages and voice mail messages, and the parties eventually agreed that Patterson would provide Asher and Marcum with thirty pills in exchange for

$120. The parties also agreed to meet at a gas station located at 21st Street and Arlington Avenue in Indianapolis to conduct the transaction.

[5] Marcum drove her Chevrolet Blazer with Asher in the front passenger seat and Edmonson behind Asher in the rear seat. They arrived first, and as they waited for Patterson, Edmonson got out of the car to smoke a cigarette. Patterson arrived a few minutes later and parked his Dodge along the passenger side of the Blazer. Edmonson was standing between the vehicles. Patterson asked who was there to buy the pills, and Edmonson responded that it was the woman driving the Blazer and indicated Marcum. Patterson then quickly exited his vehicle and placed his left hand on Edmonson's shoulder and told him not to move. Patterson pointed a 9 mm caliber rifle into Marcum's vehicle and struck Asher in the head with the barrel and said that he "just want[ed] the money." Tr. Vol. II, p. 69. Asher held up her right arm to protect her face, and Patterson told the women he was "not playing around" and wanted the money. Tr. Vol. II, p. 70.

[6] Marcum told Patterson not to hit Asher again and stated that she would give him the money. She then reached down by her left side. Instead of getting the money, Marcum grabbed a .40 caliber handgun that she had placed in the pocket of the driver's side door of her vehicle. Although no witness testified that they saw what happened next, Edmonson testified that he first heard a gunshot from his right side, where Patterson was located. Edmonson fled into the gas station as he heard several more shots being fired behind him. He also heard the sound of screeching tires. Edmonson called 911.

[7] As a result of the shooting, Asher was shot through her right forearm and in the right side of her head. Marcum fled the scene and rushed Asher to the hospital, where she was pronounced dead. Patterson was shot in the chin.

[8] Officer Nathaniel Schaller ("Officer Schaller") of the Indianapolis Metropolitan Police Department ("IMPD") was on patrol nearby and heard the sound of gunshots. He hurried to the scene of the shooting and found Patterson stumbling on Arlington Avenue, bleeding from his face. Patterson's rifle was lying in the street, with two unfired rounds jammed in the firing chamber. Patterson was also taken to the hospital, where he underwent surgery to remove a bullet fragment that was located near his right carotid artery and to stabilize his fractured jaw.

[9] Edmonson remained at the scene and gave a statement to the police. Although he at first attempted to hide the illicit nature of the transaction, he quickly told the police that they had arrived to buy narcotics from Patterson. Edmonson identified Patterson from a photographic lineup as the man involved in the shooting. IMPD Detective Shawn Looper spoke with Marcum at the hospital, and she showed him the money, $210 in cash, that she had brought to the gas station to purchase pills from Patterson.

[10] Subsequent investigation recovered no pills at the scene, although an empty pill bottle was recovered from Marcum's Blazer. The rear passenger window of the Blazer had been shot out, and the vehicle contained shattered glass from the window, spent shell casings, and bullet fragments. The police also discovered

inside the Blazer a small bag of cocaine and a glass pipe containing methamphetamine residue. In Patterson's Dodge, the police found a cell phone, shattered glass, and bullet fragments, but they found no pills or money in the vehicle.

[11] The State charged Patterson on April 17, 2015, with felony murder and attempted robbery resulting in serious bodily injury. The State subsequently alleged that Patterson was a habitual offender. Marcum died of unrelated causes prior to trial, leaving Edmonson as the State's only witness to the events of the shooting.

[12] Prior to trial, Patterson filed a notice of intent to impeach Edmondson with evidence of three of his prior convictions, i.e., a 2009 conviction for theft; a 2013 conviction for failure to register as a sex offender; and a 2016 conviction for obstruction of justice. In response, the State filed a motion in limine seeking to limit the admission of any of Edmonson's prior convictions other than one for theft. The State also sought to limit the admission of evidence that Edmonson had been on parole at the time of the shooting and that he was currently incarcerated. The trial court held a hearing on these pending motions immediately before the beginning of trial. The court determined that Edmonson's 2013 and 2016 convictions were not for crimes of dishonesty and that evidence regarding these convictions was therefore inadmissible for impeachment purposes. The court also determined that Edmonson's parole status and current incarceration were inadmissible.

[13]   A two-day jury trial began on August 8, 2016. Although Patterson did not testify on his own behalf, his theory of defense was that Marcum tried to rob him. Patterson acknowledged that Asher had been killed in the exchange of gunfire but argued that it was impossible to tell by whom she had actually been shot. The jury rejected this defense and found Patterson guilty as charged. Patterson then waived his right to a jury trial on the habitual offender issue, and the trial court found that he was a habitual offender.

[14]   The trial court held a sentencing hearing on September 9, 2016, and merged the attempted robbery conviction into the felony murder conviction for sentencing purposes. The court then imposed the advisory sentence of fifty-five years on the felony murder conviction in addition to the twenty-year habitual offender enhancement. Thus, Patterson was sentenced to an aggregate term of seventy-five years. Patterson now appeals.

## Standard of Review

[15]   All of Patterson's arguments on appeal involve the trial court's decision to exclude certain evidence. Questions regarding the admission of evidence are generally entrusted to the sound discretion of the trial court. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied*. On appeal, we review the trial court's evidentiary rulings only for an abuse of that discretion. *Id*. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

## I. Indiana Evidence Rule 609

[16] Patterson first argues that the trial court erred by limiting his use of Edmonson's prior convictions to impeach him as a witness. Indiana Evidence Rule 609(a) provides:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.

[17] Patterson argues that Edmonson's prior convictions for obstruction of justice and failure to register as a sex offender were admissible for impeachment purposes because these crimes involve dishonesty or false statement. Neither party cites any Indiana case directly on point, nor has our research revealed any.

[18] However, we need not decide today whether obstruction of justice and failure to register as a sex offender are crimes involving dishonesty or false statement. Even if we assume *arguendo* that Patterson is correct and that the trial court should have admitted evidence regarding Edmonson's prior convictions for impeachment purposes, we conclude that any error was harmless.

[19] Errors in the admission of evidence are ordinarily disregarded as harmless error unless they affect the substantial rights of a party. *Remy v. State*, 17 N.E.3d 396, 401 (Ind. Ct. App. 2014) (citing *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind.

2012)). In determining whether a party's substantial rights have been affected, we consider the evidence's probable impact on the jury. *Id*. Improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id*.

[20] In addressing this issue, we are mindful that Patterson was convicted of felony murder, not knowing or intentional murder. That is, the State was required to prove that Patterson killed Asher while attempting to commit the offense of robbery. Patterson argues that there was a question as to whether he attempted to rob Asher and Marcum or whether Marcum attempted to rob him, and that Edmonson's testimony was the key piece of evidence proving this. While we do not doubt the importance of Edmonson's testimony, there was further evidence to support the State's case. Notably, no pills were found at the scene, only an empty pill bottle. If Patterson had come to deliver pills, it might reasonably be expected that he would have had pills in his possession. Moreover, Patterson was armed with a rifle. And Asher was shot in the head on the side where Patterson was standing and shot through her forearm, indicating that she was in a defensive position. All of this points to Patterson robbing Asher and Marcum, not vice versa.

[21] We further observe that Patterson was permitted to impeach Edmonson's credibility by referring to his prior conviction for theft. Thus, the jury was aware that Edmonson had a criminal history that involved a crime of dishonesty. *See Newman v. State*, 719 N.E.2d 832, 836 (Ind. Ct. App. 1999) (noting that theft is a

crime of dishonesty), *trans. denied*. Thus, the jury was well aware that Edmonson had been convicted for a crime of dishonesty. We are unable to say that permitting Patterson to introduce evidence that Edmonson had been convicted of other crimes involving dishonesty would have swayed the jury to discredit Edmonson's testimony. Put differently, we do not think that excluding evidence of Edmonson's other convictions contributed to the jury's verdict.

[22] Indeed, Patterson would not have been permitted to delve into the details of Edmonson's prior convictions and could have only asked Edmonson whether he had been convicted of the crimes. *See Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002) (under Evidence Rule 609(a), the witness may generally be questioned only about whether he had been convicted of a particular crime and the details may not be explored).

[23] Accordingly, we hold that any error in the trial court's exclusion of evidence regarding Edmonson's other prior convictions for impeachment purposes was harmless. *See Sisson v. State*, 985 N.E.2d 1, 17-18 (Ind. Ct. App. 2012) (holding that any error in trial court's exclusion of witness's prior conviction for mail fraud was harmless where there were many other reasons to doubt the witness's credibility), *trans. denied*.

## II. Exclusion of Evidence Regarding Edmonson's Status as a Parolee or Inmate

[24] Patterson also claims that the trial court abused its discretion when it granted the State's motion in limine to prevent Patterson from introducing evidence

regarding Edmonson's status as a parolee on GPS monitoring or that he was incarcerated at the Indiana Department of Correction. At the time of the shooting, Edmonson was on parole as a result of a prior conviction for strangulation, and at the time of the trial, Edmonson was incarcerated. Patterson wished to cross-examine Edmonson on these issues to show his bias, i.e., that he had a motive to cooperate with the State to gain some benefit.

[25] Indiana Evidence Rule 616 provides that "[e]vidence that a witness has a bias, prejudice, or interest for or against any party may be used to attack the credibility of the witness."[1] As with most evidentiary matters, the trial court has wide discretion to determine the scope of cross-examination. *Tolliver v. State*, 922 N.E.2d 1272, 1285 (Ind. Ct. App. 2010), *trans. denied*. In addition, our supreme court has held that any beneficial agreement between an accomplice and the State must be revealed to the jury. *Id*. This rule allows the jury to better assess the reliability and credibility of the witness. *Id*.

[26] Here, Patterson presented no evidence in his offer of proof that there was an express or implied promises of leniency to Edmonson in exchange for his testimony. In fact, Patterson admitted to the trial court that there was no evidence of any promised or implied leniency to Edmonson in exchange for his testimony. Tr. Vol. II, p. 14. Instead, Patterson argued only that, if Edmonson

---

[1] Although Rule 616 provides for the admission of evidence showing bias or prejudice of a witness without any qualifications, our supreme court has held that Rule 616 should be read in conjunction with Rule 403's required balancing of probative value against the danger of unfair prejudice. *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999).

were given the opportunity for early release or parole, "he would certainly say that I testified truthfully in a murder trial. That is a benefit he could receive, and therefore it's a bias." *Id*. However, a witness's mere hope or expectation of receiving a benefit is insufficient to permit impeachment for bias. *See Tolliver*, 922 N.E.2d at 1285 (holding that disclosure to the defendant is not required if the witness testifies favorably only with the hope or expectation of leniency). We therefore conclude that the trial court did not abuse its discretion when it excluded evidence regarding Edmonson's status as an inmate.

## Conclusion

[27] Any error in the exclusion of Edmonson's prior convictions for obstruction of justice and failure to register as a sex offender was harmless. Although a key witness, Edmonson's credibility had already been impeached by admission of evidence that he had been previously convicted for a crime of dishonesty. The exclusion of further impeachment evidence is unlikely to have contributed the jury's verdict. We also conclude that the trial court did not err in excluding evidence of Edmonson's status as an inmate at the Indiana Department of Correction. Patterson provided no evidence that Edmonson had reached any agreement with the State in exchange for his testimony and argued only that Edmonson may have hoped to benefit from his testimony in the future. Accordingly, we affirm the judgment of the trial court.

[28] Affirmed.

Kirsch, J., and Altice, J., concur.