## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 19 2017, 8:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles W. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Juan Duron, *Appellant-Defendant,*<br><br>v.<br><br>State of Indiana, *Appellee-Plaintiff.* | September 19, 2017<br><br>Court of Appeals Case No. 71A04-1702-CR-366<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable John M. Marnocha, Judge<br><br>Trial Court Cause No. 71D02-1604-F1-7 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Juan Duron was convicted of child molesting, a Level 1 felony. On appeal, Duron raises three issues for our review which we consolidate and restate as whether the trial court abused its discretion in admitting and excluding evidence. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] In November of 2015, nine-year-old S.W. lived with her mother, Kristy, in the home of Gabriel Rios, Kristy's boyfriend. Rios' daughter, A.R., was nine years old and shared a room with S.W. Rios also permitted Duron, who was his cousin, and Duron's girlfriend, Veronica Cruz, to occasionally stay at his home. When Duron and Cruz stayed at Rios' home, they slept on the living room floor or on the floor of an upstairs bedroom with two of Rios' other children.

[3] On the evening of November 10, 2015, Duron and Cruz arrived at Rios' home and went upstairs to a bedroom. Upstairs, Duron attempted to have sex with Cruz in the bathroom. Duron put his hand down Cruz's pants and inserted his fingers into Cruz's vagina, but she told him to stop. The couple then went to bed. In another bedroom upstairs, S.W. remained awake well past midnight watching videos on her phone. Around 4:00 a.m., Duron entered the girls' bedroom. Afraid she might be in trouble for still being awake, S.W. feigned

sleep.  Duron went to the side of the bed and laid next to S.W.  S.W. described the events as follows:

> [S.W.]: It was . . . I was just playing with my phone, and then [Duron] came in and I acted like I was sleeping, because I didn't want to get in trouble. And so he came in and he laid next to me and . . . (witness visibly crying) [h]e was laying next to me, and he put his hand on my stomach and he put his hand in my pants.  And he was rubbing me and then he put his hand in my pants and he touched me right there and he put his finger inside.
>
> * * *
>
> [S.W.]: And he but [sic] his finger inside of me and it was burning.  And then I kicked [A.R.], but she didn't wake up, so the [sic] I kicked her again, and she didn't wake up.

Transcript, Volume IV at 18.  A.R. then woke up and recalled seeing Duron "hopping out of the bed and acting like he was looking for something with the lighter." *Id.* at 55.  After Duron left the room, A.R. called her father who came upstairs.  Rios went in to the girls' bedroom and found them together in a corner crying.  Rios took the girls downstairs.  Downstairs, Kristy asked S.W. what happened and S.W. told her that Duron had put his hand down her pants.

[4]  Meanwhile, Duron returned to his bedroom and woke up Cruz by placing his hand down her pants and touching her vagina.  However, Cruz heard Rios coming towards their room and pushed Duron's hand away.  Rios entered

Duron's room and confronted Duron saying, "[w]hat the hell's wrong with you, what you do that for?" *Id.* at 92. Rios then kicked Duron and Cruz out of his home. Duron remained silent and "wasn't saying nothing" when Rios confronted him. *Id.* at 93.

[5] The State charged Duron with child molesting, a Level 1 felony. At trial, Duron testified and denied the allegations he molested S.W. A jury found Duron guilty as charged and the trial court sentenced Duron to thirty-two years in the Indiana Department of Correction. Duron now appeals.

# Discussion and Decision

## I. Standard of Review

[6] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012).

## II. Evidence Duron Remained Silent

[7] Duron first alleges the trial court abused its discretion in admitting, over his objection, testimony Duron remained silent when confronted by Rios. Although difficult to follow, it appears that Duron's claim is that the trial court erred by failing to conduct a Fifth Amendment analysis regarding the admission

of evidence of Duron's silence.  *See* Brief of Appellant at 8 (stating "the [trial] court failed to approach the statements at issue using a constitutional analysis . . . .").  However, aside from a single citation to *Owens v. State*, 937 N.E.2d 880 (Ind. Ct. Appl. 2010), *trans. denied*, Duron provides no analysis of the Fifth Amendment or how it is offended by permitting testimony that Duron remained silent when confronted by Rios, a private citizen.  Accordingly, we find Duron has waived this issue.  *See Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005) (noting that failure to put forth a cogent argument acts as a waiver of the issue on appeal), *trans. denied*.

[8]  Waiver notwithstanding, the trial court did not err in failing to conduct a constitutional analysis before allowing Rios' testimony.  In *Jenkins v. Anderson*, 447 U.S. 231 (1980), the Supreme Court addressed whether the defendant's failure to contact police for two weeks following a homicide could be used by the State to impeach the defendant when he took the stand at trial and asserted that he had killed the victim in self-defense.  The Court concluded the Fifth Amendment was inapplicable because the petitioner chose to testify, thereby waiving his right to remain silent.  As to whether the Fourteenth Amendment was violated, the Court observed that "no governmental action induced [Jenkins] to remain silent before arrest.  The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings."  *Id.* at 240.

[9]  Further, in his concurrence in *Jenkins*, Justice Stevens wrote that he would have rejected the defendant's Fifth Amendment claim simply because the privilege against compulsory self-incrimination is irrelevant to a citizen's decision to

remain silent when he is under no official compulsion to speak. *See id.* at 241 (Stevens, J., concurring). According to Justice Stevens,

> The fact that a citizen has a constitutional right to remain silent when he is questioned has no bearing on the probative significance of his silence before he has any contact with the police. . . . When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment. For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view ignores the clear words of the Fifth Amendment.

*Id.* at 243-44 (Stevens, J., concurring) (footnotes omitted).

[10] Likewise, there was no government action compelling Duron to speak and his failure to do so occurred well before his arrest or involvement with law enforcement. *See, e.g., United States v. Oplinger*, 150 F.3d 1061, 1065-67 (9th Cir. 1998) (holding use of defendant's silence, when confronted with allegations of theft by his private employer, did not violate his privilege against self-incrimination), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010).

[11] More specifically, Duron argues using the fact he remained silent when questioned by Rios

> puts pressure on the defendant to testify at trial and explain his silence. Because of this, the trial court must be aware that in cases where the 5th Amendment may not bar evidence of a

defendant's silence when accusatorily confronted by civilians or police the evidence must be carefully analyzed under Indiana Rules of Evidence 402, 404 and particularly 403 before it may be admitted.

Br. of Appellant at 9-10.[1]  Therefore, Duron argues permitting introduction of this evidence implicates Indiana Rule of Evidence 403, which permits the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."

[12]  We disagree with Duron the admission of this testimony was unfairly prejudicial such that it should have been excluded.[2]  An inquiry into unfair prejudice examines "the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis." *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999) (quotation omitted). Duron has not suggested any such basis other than the ability of the evidence to influence his decision to testify and we have already concluded the Fifth Amendment is inapplicable here.  Further, all incriminating evidence would necessarily influence Duron's decision whether to testify or remain silent and the State produced substantial evidence of Duron's guilt.  Accordingly, Duron

---

[1] Duron does not provide any analysis of Indiana Rules of Evidence 402 or 404 or how they prohibit admission of this testimony.

[2] In fact, "[s]ilence or an equivocal response to an assertion made by another, which would ordinarily be expected to be denied, is a tacit admission[,]" and is admissible into evidence if there is not a clear denial. *House v. State*, 535 N.E.2d 103, 109-10 (Ind. 1989).

has failed to demonstrate this evidence was unfairly prejudicial and should have been excluded.

## III. Confrontation Clause

[13] Next, Duron alleges error in the trial court's admission of S.W.'s mother's testimony recalling what S.W. told her after the molestation. Kristy's testimony was admitted as an excited utterance by S.W. over Duron's objection. And although Duron phrases the issue as whether the "testimonial hearsay statement of a State's witness was improperly admitted as an Excited Utterance[,]" Duron provides no argument or reasoning as to why S.W.'s statement to her mother was not an exited utterance. Br. of Appellant at 11. Accordingly, this claim is waived. *Barrett*, 837 N.E.2d at 1030.

[14] Duron also alleges admitting Kristy's testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause "prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person." *Fowler v. State*, 829 N.E.2d 459, 464 (Ind. 2005), *cert. denied*, 547 U.S. 1193 (2006). However, this argument fails as S.W. was present, testified at trial, and was subject to cross-examination by Duron. *Id.* at 464-65 (noting the "federal right of confrontation has not been denied when the witness is available for cross-examination").

# IV. Other Evidence

Finally, Duron claims the trial court abused its discretion in excluding evidence of Duron and S.W.'s relationship. Specifically, Duron attempted to introduce evidence S.W. and Duron did not get along and S.W. had motive to fabricate the allegations. The trial court sustained the State's objection to the evidence as irrelevant. Although Duron's brief explains what he intended to enter into evidence and what occurred in the trial court, his brief provides no explanation or argument as to how the trial court abused its discretion or how the evidence he intended to offer "has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Ind. Evidence Rule 401. Accordingly, we find this claim to be waived. *Barrett*, 837 N.E.2d at 1030.

# Conclusion

The trial court did not abuse its discretion in admitting or excluding evidence. Accordingly, we affirm Duron's conviction.

Affirmed.

Riley, J., and Pyle, J., concur.