

**FILED**
May 15 2015, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Donald J. Frew<br>Fort Wayne, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
|  | Katherine Modesitt Cooper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dewayne M. Townsend,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 15, 2015<br><br>Court of Appeals Case No.<br>02A03-1411-CR-389<br><br>Appeal from the Allen Superior<br>Court.<br>The Honorable Wendy W. Davis,<br>Judge.<br>Cause No. 02D05-1406-FD-677 |

**Sharpnack, Senior Judge**

# Statement of the Case

Dewayne M. Townsend appeals from his conviction of one count of residential entry[1] as a Class D felony, challenging the admission of a witness's prior consistent statements and the sufficiency of the evidence. We affirm.

# Issues

Townsend presents the following restated issues for our review:

    I.    Whether the trial court abused its discretion by admitting a witness's prior consistent statements.

    II.    Whether there is sufficient evidence to support his conviction.

# Facts and Procedural History

On June 13, 2014, Townsend went to Ashleigh Fryar's apartment to spend time with the newborn child the two had in common. Townsend left after holding the baby for some time. Ashleigh then locked the front door and took the baby with her to her bedroom. Ashleigh did not respond when Townsend later returned and began knocking on the front door. Townsend requested that Ashleigh allow him to take the child with him and the two had argued about that subject earlier. After a period of time with no response, Townsend then walked to Ashleigh's window and demanded that she allow him to take the

---

[1] Ind. Code § 35-43-2-1.5 (1991).

baby with him. Ashleigh refused his request. Townsend then returned to the front door of the apartment, kicked it in, and entered Ashleigh's apartment.

[4] At some point during this incident, Ashleigh texted 911 on her cell phone. Fort Wayne Police Department officers responded to the call. Upon arriving at Ashleigh's residence, the officers observed that the door to Ashleigh's apartment had been forced open and that the door frame had been broken. Pieces of wood and pieces of the door frame were lying on the ground inside the apartment. Townsend admitted to the officers that he had kicked in the door and entered Ashleigh's apartment when she did not open the door. Although at trial he later claimed this justification for breaking down Ashleigh's door, Townsend did not tell officers at that time that he did so out of concern about the welfare of his child or that he had heard the baby crying.

[5] Additionally, after entering Ashleigh's apartment and before the police officers arrived, Townsend confronted Ashleigh. He grabbed and pulled her hair causing her pain and grabbed her face causing an injury to her lip and making it difficult for her to breathe.

[6] The State charged Townsend with residential entry and domestic battery. At Townsend's jury trial, the State introduced several exhibits, including the text messages from Ashleigh to 911, which were admitted without objection, and a letter written by Ashleigh to Townsend's counsel in which she recanted the battery allegations, also admitted without objection.

[7] The State also introduced State's Exhibit 25, a recording made at the police station of Ashleigh's conversations with her friends, which was redacted to remove any reference to Townsend's prior felony convictions. The State originally offered the video recording as an excited utterance exception to the hearsay rule, but withdrew that request and sought to have the recording introduced to rebut an express or implied charge of recent fabrication. The trial court admitted the recording over Townsend's hearsay objection and the recording was published to the jury.

[8] After the State rested its case, Townsend testified and admitted that he kicked in the front door of Ashleigh's apartment when she did not open the door. He claimed that he did so out of concern for the welfare of his child.

[9] At the conclusion of the trial, the jury was unable to reach a verdict on the domestic battery charge, but found Townsend guilty of residential entry. The trial court sentenced Townsend to two years for his residential entry conviction with one year suspended to probation. Townsend now appeals.

# Discussion and Decision

## I. State's Exhibit 25

[10] Townsend claims that the trial court abused its discretion by admitting State's Exhibit 25 during Townsend's jury trial. Trial courts have broad discretion to rule on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). On appellate review, we review the trial court's rulings "'for abuse of that discretion and reverse only when admission is clearly against the logic and

effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id.* (quoting *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013)). The trial court's broad discretion extends to situations involving the admissibility of purported hearsay. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).

[11] "Hearsay is an out-of-court statement offered for 'the truth of the matter asserted,' Ind. Evidence Rule 801(c)(2), and it is generally not admissible as evidence." *Id*. at 565 (quoting Ind. Evidence Rule 802). "'Whether a statement is hearsay . . . will most often hinge on the purpose for which it is offered.'" *Id*. (quoting *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998)). Indiana Evidence Rule 801(d)(1)(B) provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement, the statement is consistent with the declarant's testimony, and the statement is offered to rebut an express or implied charge that the declarant recently fabricated the statement or acted from a recent improper influence or motive for testifying.

[12] A prior inconsistent statement may be used to impeach a witness. *Martin v. State*, 736 N.E.2d 1213, 1217 (Ind. 2000). If used for that purpose, it is not hearsay because the statement is not used to prove the truth of the matter asserted. *Id.* In other words, the statement is used to establish that the witness previously made a statement contrary to his testimony, not necessarily that the prior inconsistent statement is substantively true.

[13]    In this appeal we are asked to examine the use of a prior consistent statement. Our Supreme Court cited Judge Miller's treatise on evidence when discussing the use of prior consistent statements:

> If an adversary has made an express or implied charge against the witness of recent fabrication or improper influence or motive, and the prior consistent statement was made before the motive to fabricate arose, the prior consistent statement is admissible as substantive evidence; if the prior consistent statement was made after the motive to fabricate arose, however, it is admissible to rehabilitate a witness.

*Bassett v. State*, 895 N.E.2d 1201, 1214 (Ind. 2008) (quoting 13 Robert L. Miller, Jr., Indiana Evidence § 613.208 (1995)). In this case, a prior consistent statement would be properly admitted if Ashleigh had testified on direct examination that Townsend beat her, then Townsend had confronted her on cross-examination with the letter recanting her allegation of domestic battery and suggested, for example, that the State put Ashleigh up to her trial testimony. The State would then be allowed to introduce State's Exhibit 25, a prior consistent statement, to rebut Townsend's charge of recent fabrication.

[14]    The facts here do not present the common situation in which prior consistent statements are used to refute an express or implied charge of recent fabrication. The State apparently anticipated that Townsend would attempt to impeach Ashleigh with the letter and introduced it during direct examination to reduce its impeachment value. On cross-examination, Townsend noted the varying stories, thus challenging Ashleigh's credibility, but did not expressly or

impliedly allege recent fabrication, *viz.* that her trial testimony was fabricated at the instance of the State.

[15] Rather, Ashleigh testified on direct examination that she called 911 because Townsend was "beating down" her door. Tr. p. 85. She further testified that after Townsend entered her home, he then entered her bedroom, pulled her hair, and grabbed her face, causing her pain and busting her lip. The State asked her about the notarized letter she had written to Townsend's attorney in which she recanted her allegation that Townsend physically harmed her. She identified the letter and it was admitted into evidence without objection. She then read the letter aloud. Ashleigh testified that the contents of the letter were not true, and that she wrote the letter because at that time she wrote it she "was conflicted between right and wrong." *Id.* at 91-92. She stated that her testimony at trial accurately described what had happened.

[16] On cross-examination, Ashleigh testified that her testimony in court was essentially the same as what she told the officers who responded to her 911 call. She also acknowledged the letter she had written to Townsend's lawyer. She agreed with counsel's suggestion that she had notarized the letter "to give this letter some validity and a little extra weight." *Id.* at 98. While testifying about the letter, Ashleigh agreed when Townsend's counsel asked her if by drafting the letter she had "presented a complete fabrication after [she] had time to reflect on what happened on June 13th." *Id.* at 100. She also agreed with Townsend's counsel's statement that she had "presented two pretty much diametrically different accounts about what happened that day." *Id.* at 101. He

finished his cross-examination of Ashleigh by getting her to agree to the context and sequence of those two different stories when he asked her if there was "one account you gave to the police that day and then one account that you gave in this notarized letter that you authored at some point later[.]" *Id.* at 102.

[17] On redirect, Ashleigh testified that she spoke with three officers on the day of the incident and that she had told each of them that Townsend had broken down the door, grabbed and pulled her hair, and had grabbed her mouth.

[18] During Detective Roos's testimony, which followed Ashleigh's testimony, the State attempted to introduce State's Exhibit 25, a redacted audio and video tape of Ashleigh making telephone calls to her friends while she waited in an interview room. The proposed legal basis for the admissibility of the exhibit was the excited utterance exception to the hearsay rule. The exhibit was not admitted at that time. However, Detective Roos testified that Ashleigh's testimony in court was consistent with what she had told him during her interview.

[19] Later, the State called Ashleigh to the witness stand again and asked her to identify State's Exhibit 25. The State then argued that the exhibit was admissible as a prior consistent statement offered to rebut an express or implied charge of recent fabrication. The trial court admitted the exhibit over Townsend's objection. However, this was an abuse of discretion.

[20] We recently summarized the parameters set for the appropriate use of prior consistent statements that have developed through case law and evidentiary

rules in *Corbally v. State*, 5 N.E.3d 463 (Ind. Ct. App. 2014). In Corbally, we cited to language from our Supreme Court's opinion in *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), stating that adoption of what is now Indiana Evidence Rule 801(d)(1) "was necessary to prevent 'abuses' in the use of a witness's prior consistent statements, such as by bolstering 'the testimony of what might otherwise be regarded as a weak witness' and prohibiting '[n]umerous witnesses [from testifying] to the same statement given by a particular witness, thereby creating the prohibited drumbeat of repetition.'" 5 N.E.3d at 469. In particular, we noted that "cases have made clear that there is a difference between merely challenging a witness's credibility versus making an express or implied charge of fabricated testimony or improper influence or motive." *Id.* "If there has only been general impeachment of a witness's credibility, then prior consistent statements by the witness are hearsay and not admissible as substantive evidence." *Id.* "Also, general attacks upon a witness's memory do not constitute a charge that the witness fabricated testimony and do not permit the admission of prior consistent statements by the witness." *Id.* In this case there was not even a suggestion made that Ashleigh's testimony at trial was a recent fabrication or the product of a recent improper influence or motive.

[21] Although the trial court abused its discretion by admitting State's Exhibit 25, the error is subject to harmless error analysis. *Id.* at 470. In that situation, we must consider whether the evidence was likely to have substantially swayed the jury's verdict. *Id.* The evidentiary error is harmless if we are satisfied that the conviction is supported by such substantial independent evidence of guilt that

there is little likelihood the challenged evidence contributed to the conviction. *Id.* Whether an error contributed to a verdict, requires the appellate court to determine whether the erroneously admitted evidence was unimportant in relation to everything else the jury considered on the issue in question. *Id.*

[22] Ashleigh told the officers that Townsend came to her apartment, knocked on her door, broke down the door, and confronted her. She testified at trial consistently with that account of the incident. The officers who responded to Ashleigh's 911 call observed that the front door to Ashleigh's apartment had been damaged. Townsend admitted to the officers that he broke down the door to Ashleigh's apartment and entered it. The letter was about the battery charge on which the jury was unable to reach a verdict. We are satisfied that the conviction is supported by substantial independent evidence of guilt. The erroneous admission of State's Exhibit 25 was harmless.

## II. Sufficiency of the Evidence

[23] Townsend also challenges the sufficiency of the evidence supporting his conviction. Although Townsend admitted that he knowingly or intentionally broke and entered Ashleigh's apartment, he claims that he had her consent to do so. Our standard of review of this issue was stated as follows by the Supreme Court:

> We recite our familiar standard for reviewing the sufficiency of the evidence needed to support a criminal conviction. First, we neither reweigh the evidence nor judge the credibility of witnesses. Second, we only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn

from such evidence." A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. "It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling."

*Willis v. State*, 27 N.E.3d 1065, 1066-67 (Ind. 2015) (internal citations omitted).

[24] In order to establish that Townsend committed residential entry as a Class D felony, the State was required to prove beyond a reasonable doubt that Townsend knowingly or intentionally broke into and entered Ashleigh's apartment. Ind. Code § 35-43-2-1.5. "Lack of consent is not an element of the offense the State is required to prove." *McKinney v. State*, 653 N.E.2d 115, 118 (Ind. Ct. App. 1995). "Rather, it is the defendant who must claim and prove the defense of consent." *Id.* "A defendant's belief that he has permission to enter must be reasonable in order for the defendant to avail himself of the defense of consent." *Id.*

[25] The evidence at trial established that Ashleigh allowed Townsend to enter her home earlier that day to spend time with their child. After Townsend left, however, Ashleigh locked the door to the apartment. When Townsend returned to the apartment, Ashleigh took the child with her to her bedroom and did not respond to Townsend's requests to let him inside the apartment. Ashleigh texted 911 to report that Townsend was attempting to break into her apartment. Townsend went to the window and asked Ashleigh to allow him to

take their child with him. After Ashleigh refused Townsend's request, he returned to the front door, kicked it in, and entered Ashleigh's apartment where the two argued.

[26] Townsend argued for the first time at trial that he broke down the door of Ashleigh's apartment out of concern for the welfare of their child. Ashleigh had previously given Townsend a key to the apartment, but Townsend did not have the key with him and did not use it to gain entry to Ashleigh's apartment. Ashleigh testified that Townsend had previously told her that he had lost the key.

[27] Whether Townsend's belief that he had Ashleigh's permission to enter the apartment was reasonable was a matter for the jury to determine. Because the jury convicted Townsend of residential entry, the jurors must have rejected his defense. Consistent with our standard of review, we will not reweigh the evidence or reassess the credibility of the witnesses. *Willis*, 27 N.E.3d at 1066.

# Conclusion

[28] In light of the foregoing, we affirm the decision of the trial court.

[29] Affirmed.

Kirsch, J., and Bradford, J., concur.