## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 08 2020, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
JMT Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles E. Johnson, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff,* | May 8, 2020 <br><br> Court of Appeals Case No. 19A-CR-2239 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable David D. Kiely, Judge <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause No. 82C01-1712-F6-7645 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Charles Johnson, Jr. was convicted of residential entry, a Level 6 felony. The trial court sentenced Johnson to serve twenty-six months in the Indiana Department of Correction ("DOC"). Johnson appeals and raises two issues for our review, which we reorder as: (1) whether the evidence is sufficient to support his conviction; and (2) whether Johnson's sentence is inappropriate in light of the nature of the offense and his character. Concluding the evidence is sufficient to support his conviction and his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. In December 2017, Jamie Followell was renting a house on East Gum Street in Evansville where she and her five children lived. Jamie's sister, Angela, is married to Johnson and has six children. Johnson is the father of three of Angela's children. At the time, Angela and her six children had been temporarily living with Jamie for the past three months.

[3] On December 10, Jamie woke up to several text messages from Johnson that he had sent early that morning. Johnson "said that he was fed up with [Jamie] interfering with his marriage with [Angela]." Transcript of Evidence, Volume II at 7. Jamie testified that she and Johnson began arguing via text:

> He said that he was fed up and that he was going to be taking his family back. I told him that that was my sister's choice, whether she wanted to or not, and I told him that I didn't appreciate some of the past things get [sic] mentioned, and he said that he was taking control of the situation. That I needed to step down, or else.

*Id.* Toward the end of their argument, Johnson told Jamie he planned to be at the house in five minutes and Jamie responded, "[D]o not come to my home." *Id.*

[4]	Jamie slid her shoes on and called 911 for help as she walked through the house to the front door. Less than five minutes later, Johnson arrived at the house and began banging on the front door. Jamie saw her mother, Loretta, who had stayed at the house the night before. Jamie told Loretta that Johnson was coming and they both heard him banging on the door. Jamie walked toward the door, pulled the curtain back, and told Johnson to leave. At the same time, Loretta was walking toward the door. Johnson punched the glass window to the side of the door and reached in to unlock the door. Because Jamie was pregnant at the time, Loretta pushed her out of the way as Johnson pushed against the door. The door flung open and hit Loretta in the head causing her to bleed.

[5]	Johnson stepped inside the house. Jamie told Johnson to "get out" but he replied "no." *Id.* at 10. Instead, Johnson stood in front of the door and demanded that several of his children "get up and get out[.]" *Id.* His fourteen-year-old daughter got up, walked barefoot across the glass, and left the house.

Johnson observed Jamie on the phone with 911 and told her "call the police, that's fine, I'm waiting here for them." *Id.* at 11. Johnson waited outside and police arrived shortly thereafter.

[6] On December 13, the State charged Johnson with residential entry, a Level 6 felony. At Johnson's jury trial, Loretta testified that, in December 2017, Johnson was not welcome in the house. He was, however, allowed to come pick his children up for parenting time. Loretta stated that "[h]e was welcome to pull up in his vehicle and [the children] could walk out there, but he could not or he shouldn't come up. . . . Jamie didn't want him there." *Id.* at 27. At trial, Johnson testified that he "believed at the time [that he] was the landowner by contract" because Jamie's lease had ended in October and he and Angela planned to take over the property. *Id.* at 30. However, Johnson never made any payments toward the property and did not have any documentation to show he had any possessory interest in the property.

[7] The jury found Johnson guilty as charged and the trial court entered judgment of conviction. On June 24, 2019, the trial court held a sentencing hearing. In sentencing Johnson, the trial court found the fact that Johnson's sentence will impose hardship on his children a mitigating factor. The trial court found the following aggravating factors: (1) the offense resulted in injury to one of the victims; (2) the fact that the crime was committed in the presence of or nearby children and the children witnessed the events that occurred; (3) the fact that Johnson was on bond when he committed the offense; and (4) Johnson's criminal history. *See id.* at 47-48. The trial court sentenced Johnson to serve

twenty-six months in the DOC and recommended that he receive drug treatment. Johnson now appeals.[1] Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Sufficiency of the Evidence

[8] Our standard of reviewing a sufficiency claim is well-settled. *Brent v. State*, 957 N.E.2d 648, 649 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence or assess the credibility of the witnesses. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017). Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences supporting it. *Id*. Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). "[W]e will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt." *Id*.

[9] To convict Johnson of residential entry, the State had to prove that he knowingly or intentionally broke into and entered the dwelling of another person. Ind. Code § 35-43-2-1.5. A dwelling is defined as a "building,

---

[1] On June 24, Johnson requested indigent counsel and was appointed a public defender to perfect the appeal; however, Johnson did not file a timely notice of appeal through no fault of his own. On July 29, 2019, Johnson, by counsel, filed a Petition for Permission to File a Belated Notice of Appeal Pursuant to Indiana Rule PC 2. *See* Belated Appellant's Appendix, Volume II at 41-42, 53. The trial court granted the petition and Johnson filed his notice of appeal with court on September 23, 2019.

structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." Ind. Code § 35-31.5-2-107.

[10] Johnson argues the evidence was insufficient to support his residential entry conviction. The crux of his argument is he had the consent of the property owner to enter the house because he honestly believed he had the right as a lawful tenant to be there because he thought he had made payments on the house. *See* Belated Appellant's Brief at 13-15. As such, he contends his conviction cannot stand. We disagree.

[11] Lack of consent is not an element of the crime of residential entry. *Townsend v. State*, 33 N.E.3d 367, 373 (Ind. Ct. App. 2015) (internal quotation omitted), *trans. denied.* "Rather, it is the defendant who must claim and prove the defense of consent." *Id.* (internal quotation omitted). "A defendant's belief that he has permission to enter must be *reasonable* in order for the defendant to avail himself of the defense of consent." *Id.* (emphasis added).

[12] Both parties focus on who rightfully possessed the property at the time of the offense and point to conflicting testimony in support of their own position. At trial, Johnson testified that he believed he the right to enter because he believed he was the "landowner by contract." Tr., Vol. II at 30. He further testified that "Jamie's lease was up . . . at the end of October, and she was supposed to be out. Where me and my wife was going [sic] to take over the property." *Id.* However, when asked whether he had ever made any payments toward the property, Johnson responded only, "I thought I had." *Id.*

[13] However, the rightful possessor of the property is irrelevant because the residential entry statute requires that one knowingly or intentionally break into the "dwelling of another," which only requires that the building be another person's "home or place of lodging," not that he or she rightfully possessed it. Ind. Code §§ 35-43-2-1.5, 35-31.5-2-107. Here, although Johnson claims he had a possessory interest in the house, there is no evidence that it was his home or place of lodging. Instead, the evidence clearly demonstrates that Jamie, Angela, and the eleven children were living in the house – either permanently or temporarily – at the time Johnson broke in. At trial, Jamie testified that she had a written lease agreement to rent the house, which expired in November 2018, but she continued to live there with her children, and Angela had been living in the house with her for the last three months. Loretta testified that Johnson was neither living in nor welcome in the house.

[14] With respect to the conflicting testimony, the State explained to the jury in its closing argument,

> Mr. Johnson believed, according to him, that he was the homeowner. The testimony that you heard from Loretta and Jamie . . ., was that not only was he not the homeowner, that Jamie . . . was the leaser of that property and that Mr. Johnson was not even welcome on the porch, let alone inside the home. So, we've got a conflict of facts. Now, it's up to each and everyone [sic] of you to decide how to resolve that conflict.

*Id.* at 37. The jury resolved this conflict in favor of Jamie's testimony by finding Johnson guilty of residential entry. And we conclude there is ample evidence in

the record from which the jury could reasonably infer that not only did Johnson *not* have consent to enter the house, his belief that he did was not reasonable.

[15] Johnson and Jamie argued via text and Johnson was "fed up" with Jamie's alleged involvement or interference in Johnson's marriage. *Id.* at 7. Johnson told Jamie he was "taking control of the situation" and she "needed to step down, or else." *Id.* Johnson then stated he was going to come over to the house and Jamie responded, "do not come to my house." *Id.* Minutes later, Johnson arrived at the house and began banging on the front door. Jamie told Johnson to leave but he broke the glass window next to the door, reached in, unlocked the door, and forced his way inside the home. Once Johnson was inside, Jamie told him to "get out" but he refused. *Id.* at 10. After instructing his children to leave, Johnson then walked out of the house and waited for police. At trial, Loretta testified that Johnson was permitted to drive up to the house to pick up his children for parenting time, but he was not welcome inside the house.

[16] Even though Johnson believed he had a right to be in the house at the time, and even though it was well past the expiration of Jamie's lease, Jamie continued to live in the house with her children; Johnson's wife and children were living there; and he only "thought" he had begun to make payments to take over the lease. *Id.* at 30. Based on this evidence, plus the fact that he had to break a window to gain entry, we conclude Johnson's belief that he was the "landowner" was unreasonable because he had not yet taken possession of the premises and he clearly did not have consent to enter the house. Therefore,

there is sufficient evidence to support Johnson's conviction and his argument to the contrary is merely a request for this court to reweigh the evidence in his favor, which we will not do. *Purvis*, 87 N.E.3d at 1124.

## II.  Inappropriate Sentence

[17]   Johnson also contends his twenty-six-month sentence is inappropriate in light of the nature of the offense and his character.

[18]   Article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).  Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Sentencing decisions rest within the discretion of the trial court and, as such, should receive considerable deference.  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).  "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)."  *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19]   The defendant bears the burden of demonstrating his sentence is inappropriate under the standard, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors in the record in making such a determination, *Reis v.*

*State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, "whether we regard a sentence as [in]appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. And the principal role of this court in reviewing of a defendant's sentence is "not to achieve a perceived 'correct' result in each case[,]" but to attempt to leaven the outliers. *Id.* at 1225. Thus, the question is *not* whether the defendant's sentence is appropriate or another sentence is *more* appropriate; rather, the test is whether the sentence is inappropriate. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017).

## A. Nature of the Offense

[20] We begin our analysis of the "nature of the offense" prong with the advisory sentence. *Reis*, 88 N.E.3d at 1104. The advisory sentence is the starting point the Indiana legislature has selected as an appropriate sentence for the committed crime. *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 6 felony is a fixed term of six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). Johnson's twenty-six-month sentence was only four months less than the maximum allowable sentence for a Level 6 felony.

[21] The nature of the offense is found in the details and circumstances of the offenses and the defendant's participation therein. *Lindhorst v. State*, 90 N.E.3d 695, 703 (Ind. Ct. App. 2017). Here, despite being told he was not welcome in

Jamie's house, Johnson showed up and violently forced his way into the house. He banged on the front door, broke the side window, reached in and unlocked the door, and forced his way inside. And as a result, the door swung open and hit Loretta in the face, causing injury. Further, Johnson committed this crime in the presence of as many as ten children and once inside, he demanded that his fourteen-year-old daughter leave, causing her to walk across broken glass to exit the house. In essence, Johnson escalated a disagreement with his wife's sister to include his own children, as well as Jamie's children, and as a consequence of his actions, his mother-in-law was injured. Ultimately, we are unpersuaded that the nature of Johnson's offense renders his sentence inappropriate.

## B. Character of the Offender

[22] The "character of the offender" portion of the Rule 7(B) standard refers to the general sentencing considerations and relevant aggravating and mitigating factors. *Williams v. State*, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003), *trans. denied*. A defendant's life and conduct are illustrative of his or her character. *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. And a defendant's criminal history is one relevant factor in analyzing his or her character. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history varies based on the "gravity, nature, and number of prior offenses in relation to the current offense." *Id*.

[23] In sentencing Johnson to twenty-six months, the trial court found Johnson's criminal history an aggravating factor. Johnson's pre-sentence investigation report reveals that he has an extensive criminal history dating back to 1997. His criminal history is comprised of multiple felony and misdemeanor convictions in multiple states, including non-support, resisting law enforcement, vehicle theft, possession of a controlled substance, disorderly conduct, obstructing traffic, false informing, a firearm offense, and an alcohol related offense. *See* Belated Appellant's App., Vol. II at 66-68. In addition, Johnson has one weapons related conviction in the federal system. *See id.* at 67. Moreover, the record also establishes that even after Johnson committed the instant offense, he committed additional offenses for which he was convicted before this case went to trial. And finally, Johnson committed the instant offense while on bond for another offense.

[24] This court has held that "[e]ven a minor criminal record reflects poorly on a defendant's character[.]" *Reis*, 88 N.E.3d at 1105. Johnson's extensive criminal history reflects poorly on his character and despite his frequent contact with our criminal justice system, he was not deterred from committing the present offense. *See Rutherford*, 866 N.E.2d at 874. Given Johnson's inability or unwillingness to change his behavior and his extensive criminal history, we cannot conclude his twenty-six-month sentence is inappropriate in light of his character. As such, we decline to revise his sentence.

# Conclusion

For the reasons set forth above, we conclude the evidence is sufficient to support Johnson's residential entry conviction and his twenty-six-month sentence is not inappropriate in light of the nature of the offense and his character. Accordingly, we affirm.

Affirmed.

May, J., and Vaidik, J., concur.